TERESA C. CHOW (SBN 237694)
tchow@bakerlaw.com
ALEXANDER VITRUK (SBN 315756)
avitruk@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendants*
CEDARS-SINAI HEALTH SYSTEM and
CEDARS-SINAI MEDICAL CENTER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEDARS-SINAI HEALTH SYSTEM and CEDARS-SINAI MEDICAL CENTER,<br><br>Defendant. | Case No.: 2:23-cv-870<br><br>[Los Angeles County Superior Court Case No.: 22STCV41085]<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>Action Filed:     12/30/2022<br>Action Removed: 02/03/2023 |

## NOTICE OF REMOVAL

Over the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure. This case challenges the legitimacy of actions CEDARS-SINAI HEALTH SYSTEM and CEDARS-SINAI MEDICAL CENTER (collectively "Cedars-Sinai") has taken in connection with pursuing that directive. Cedars-Sinai therefore removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In like circumstances, as explained *infra* at pp. 9-10, district courts have allowed removal under the federal officer removal statute. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *see also Doe v.*

1

*ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020).

In support of removal, Cedars-Sinai provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1. Cedars-Sinai is a California nonprofit public benefit corporation with its principal place of business at 8700 Beverly Boulevard Los Angeles, California 90048.

2. On December 30, 2022, Plaintiff John Doe filed a complaint against Cedars-Sinai, in the Superior Court of the State of California for the County of Los Angeles, Case No. 22STCV41085.

3. Plaintiff served Cedars-Sinai with the Complaint, effective on January 6, 2023.

4. Plaintiff's nine-count Complaint purports to challenge Cedars-Sinai's routine on-line practices as various invasions of privacy, including alleged violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 630, 631, 632, *et seq.*, Confidentiality of Medical Information Act § 56 *et seq*, California's Constitutional right to privacy, breach of implied contract, breach of contract, breach of implied covenant of good faith and fair dealing, negligence, and violations of the Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200, *et seq*. *See generally* Complaint.

5. Cedars-Sinai operates a website, www.cedars-sinai.org, that among other things, provides information to the public about Cedars-Sinai and allows patients to access their medical records through a Cedars-Sinai patient portal.

6. Plaintiff alleges that he is a Cedars-Sinai healthcare consumer and patient who used "https://www.cedars-sinai.org/, including its patient portal available through the Website, My CS-Link, to communicate personal medical information to Defendant." Compl. ¶¶ 2, 12.

7.      Plaintiff alleges that, Cedars-Sinai installed tracking code on its website "to obtain insight about how its patients and potential patients use its Website." *Id*. ¶¶ 4-5.

8.      Plaintiff alleges that, the Meta Pixel, allegedly used on Cedar-Sinai's website, "enables Meta not only to help Cedars-Sinai with advertising to its own patients outside the Cedars-Sinai Website, but also to include individual patients among groups targeted by other Meta advertisers relating to the conditions about which patients communicate on Cedars-Sinai's Website." *Id*. ¶ 32.

9.      The Meta Pixel is "a piece of code written by Meta to enable itself and its business customers to track and share data about customer transactions." *Id*. ¶ 22.

10.     Additionally, Plaintiff alleges that, Google Analytics, allegedly used on Cedars-Sinai's website, is "a web analytics service that allows website owners to track visitor actions on the Website and target them with personalized advertisements." *Id.* ¶ 55.

11.     Further, Plaintiff alleges that, bat.bing, allegedly used on Cedars-Sinai's website, "collects a Microsoft's Machine Unique Identifier (MUID cookie) from users." *Id*. ¶ 69. Bat.bing "is used for advertising, site analytics, and other operational purposes." *Id*.

12.     Similarly, Plaintiff alleges that, Broadcastmed.innocraft.cloud, allegedly used on Cedars-Sinai's website,  "plans, produces, and promotes engaging healthcare content in the clinical setting using data-driven solutions to optimize marketing initiatives." *Id*. ¶ 71 (internal quotations omitted). Finally, Plaintiff alleges that, Mktoresp.com, allegedly used on Cedars-Sinai's website, is a tracking code, "which transferred the name of the doctor that the patient clicked on to a third party, along with the user's IP address, without the patient's knowledge or consent." *Id*. ¶¶ 73-74.

13.     Plaintiff does not assert that Cedars-Sinai discloses names, social security numbers, diagnoses, birth dates or comparable information to third parties.

**BASIS FOR REMOVAL**

14. Cedars-Sinai removes this case pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id*. § 1442(a)(1).

15. The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and that defendants may remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). To do so, a defendant must show that (a) it is a "person" within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a "colorable federal defense." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019) (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)).

16. Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid programs (like Cedars-Sinai) to offer patients online access to their medical records, and to optimize patient engagement with their medical information. The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

17. Cedars-Sinai has dutifully assisted and followed the federal government's direction in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the federal officer removal statute must be broadly construed, and because this suit

DEFENDANTS' NOTICE OF REMOVAL
CASE NO. 2:23-CV-870

implicates this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

18.   In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

19.   Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id*.

20.   Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "<u>collaborate with</u> . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf (emphasis added).   And, in the 2020-2025 plan, it noted that this has already happened, saying: "Federal, state, and local governments, along with the private sector, have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-10/Federal%20Health%20IT%20Strategic%20Plan_2020_2025.pdf ("2020-2025 Strategic Plan").

21. One critical aspect of this strategy is CMS' "Meaningful Use" program. 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.

22. Under this program, providers must meet certain criteria to receive full Medicare reimbursement, one of which is having an interoperable patient portal. Regulations provided for incentive payments of up to two percent for providers that reached certain levels of engagement with electronic health record use through the patient portal.

23. To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

24. In addition to this guidance, CMS has created its own portal, offering what is essentially a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users

"provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

### Cedars-Sinai Is A "Person"

25. By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

26. While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Arness v. Boeing N. Am., Inc.,* 997 F. Supp. 1268, 1272 (C.D. Cal. 1998); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992); *Overly v. Raybestos-Manhattan*, No. C-96-2853-SI, 1996 U.S. Dist. LEXIS 13535, at *7 (N.D. Cal. Sept. 6, 1996); *Malek v. Blackmer Pump Co.*, No. CV 15-04454 SJO (JEMx), 2015 U.S. Dist. LEXIS 97755, at *5 (C.D. Cal. July 24, 2015).

27. Cedars-Sinai is a California nonprofit public benefit corporation, and since the federal officer statute is to be broadly construed, Cedars-Sinai qualifies as a person under that statute.

### There is a Causal Nexus Between Cedars-Sinai's Actions and Plaintiff's Claims

28. To demonstrate a causal nexus, the private person must show: (1) that the person was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiff's claims against it. *See Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017). The federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–49, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### *Cedars-Sinai is Acting Under a Federal Officer*

29. This element focuses on the relationship between the federal government and the private entity. It asks whether the entity is engaged in "an effort to *assist*, or to *help carry out*, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "detailed regulation, monitoring, or supervision." *Goncalves*, 865 F.3d at 1245 (citing to *Watson*, 551 U.S. at 152) (emphasis added).

30. Here these fundamental and liberally-construed requirements are easily met. The federal government is incentivizing, regulating, monitoring and supervising Cedars-Sinai's actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

31. First, Cedars-Sinai (along with numerous other healthcare entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information. In fact, Cedars-Sinai was among the first health systems in the U.S. to implement an Electronic Medical Records (EMR) system, and it has actively participated in the federal Meaningful Use program largely since the program's inception. As an early adopter, Cedars-Sinai has qualified for and received meaningful use incentive payments under the program. Notably, the federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

32. Second, in the absence of Cedars-Sinai's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscore, it would likely attempt to do exactly that.

33. Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

34. Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like Cedars-Sinai). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes Cedars-Sinai and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

35. In like circumstances, courts have liberally construed the "acting under" requirement, holding that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *UPMC*, 2020 WL 4381675, at *6 (holding that the University of Pittsburgh Medical Center's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *see also Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

36. In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of Plaintiff's personally identifiable information to third parties for internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The *UPMC* court focused on both the portal and the public website as being ways of furthering the government's goal of increasing patient engagement with electronic health records. *See, e.g.*, "UPMC, as a participant

in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria." *Id*. at *6. The *UPMC* court also emphasized that "it is not necessary that the complained-of conduct be done at the specific behest of the federal superior," and "any dispute about whether the allegedly wrongful conduct was outside the scope the private entity's duties is the very thing that should be left to a federal court to decide." *Id*. at *7. A private entity "need only show that the allegations in the complaint are directed at the private entity's efforts to assist a federal superior." That low bar is clearly met here. Here, as in *UPMC*, "[t]here is plainly a connection or association between [the medical provider's alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id*.

### Plaintiff's Claims Relate to the Actions Under Color of Federal Office

37. Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office. As the *UPMC* decision shows, this requirement is liberally construed and easily met here. *UPMC*, 2020 WL 4381675, at *12 ("There is plainly a connection or association between UPMC's website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability.").

38. Plaintiff's Complaint directly challenges Cedars-Sinai's website analytics practices, which promote "meaningful use" by helping to drive patients to the Cedars-Sinai website and to its patient portal.

39. Plaintiff's Complaint also generally targets Cedars-Sinai's alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical website. The Meaningful Use program envisions these activities, as manifested by the federal government's own use of these codes and third parties for its Medicare website.

40.     Indeed, as Plaintiff himself alleges, the entire point of using the third-party services is to direct traffic to, and increase engagement with, Cedars-Sinai's website. For example, he alleges that the Meta Pixel is "a piece of code written by Meta to enable itself and its business customers to track and share data about customer transactions." Compl. ¶ 22. Likewise, he says that the Meta Pixel "enables Meta not only to help Cedars-Sinai with advertising to its own patients outside the Cedars-Sinai Website, but also to include individual patients among groups targeted by other Meta advertisers relating to the conditions about which patients communicate on Cedars-Sinai's Website." *Id.* ¶ 32.

41.     Further, Plaintiff alleges that Google Analytics is "a web analytics service that allows website owners to track visitor actions on the Website and target them with personalized advertisements." *Id.* ¶ 55. Additionally, Plaintiff alleges that bat.bing "is used for advertising, site analytics, and other operational purposes." *Id.* ¶ 69.

42.     Similarly, Plaintiff says that Broadcastmed.innocraft.cloud "plans, produces, and promotes engaging healthcare content in the clinical setting using data-driven solutions to optimize marketing initiatives." *Id.* ¶ 71 (internal quotations omitted). Finally, Plaintiff claims that Mktoresp.com is a "marketing automation service…." *Id.* ¶ 73.

***Cedars-Sinai Raises Colorable Federal Defenses to Plaintiff's Claims***

43.     The final requirement for removal under this statute erects a low bar and merely requires that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989); *see also Bahrs v. Hughes Aircraft Co*., 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.")

44. Defendant intends to assert several defenses, but by way of illustration and not limitation, there are at least two colorable federal defenses to the claims at issue here that satisfy this requirement.

45. First, in response to Plaintiff's repeated claims that "protected health information" and "personally identifiable information" were disclosed, Cedars-Sinai will argue that the information purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The Northern District of California has already made this holding in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

46. Second, to the extent that they ever could create a viable cause of action under California law, Cedars-Sinai will argue that federal law preempts Plaintiff's common-law claims for alleged invasion of privacy. *See generally*, Compl. ¶¶ 162–169.

47. Because each of the requirements of the statute are satisfied, removal to this Court is proper.

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

48. Cedars-Sinai satisfies all of the procedural requirements under 28 U.S.C. § 1446.

49. Cedars-Sinai is filing this Notice of Removal within thirty (30) days of its receipt of the Complaint by "service," 28 U.S.C. § 1446.

50. Cedars-Sinai files this Notice in the United States District Court of the Central District of California, because the State court in which the action is pending, the Superior Court of Los Angeles County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Civil Procedure, Rule 11.

51. Cedars-Sinai has attached hereto as **Exhibit "A"** a true and correct copy of "all process, pleadings, orders, and other documents," currently on file in the state court, including Plaintiff's Complaint.

52. Upon filing this notice, Cedars-Sinai will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the State court.

53. Pursuant to Federal Rule of Civil Procedure 7.1, Cedars-Sinai is filing a Corporate Disclosure Statement concurrently with this Notice of Removal.

## CONCLUSION

As set forth above, Plaintiff's Complaint directly challenges practices and procedures Cedars-Sinai has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

DATED: February 3, 2023          **BAKER & HOSTETLER LLP**

By:  */s/Teresa C. Chow*
     TERESA C. CHOW

*Attorneys for Defendant*
CEDARS-SINAI HEALTH SYSTEM and
CEDARS-SINAI MEDICAL CENTER

# PROOF OF SERVICE

I, Nancy L. Brazil, declare:

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On February 3, 2023, I served a copy of the within document(s):

**DEFENDANT'S NOTICE OF REMOVAL**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☑ by transmitting via electronic mail the document(s) listed above to the e-mail address(es) set forth below on this date and the transmission was reported as complete and without error.

| | |
|---|---|
| Rachele R. Byrd<br>Ferdeza Zekiri<br>**WOLF HALDENSTEIN ADLER**<br>**FREEMAN & HERZ LLP**<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br>Telephone:  619.239.4559<br>Email:       Byrd@whafh.com | *Attorneys for Plaintiff*<br>JOHN DOE, on behalf of himself and all others similarly situated |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on February 3, 2023, at Los Angeles, California.



Nancy L. Brazil