# EXHIBIT "A"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/30/2022 06:18 PM David W. Slayton, Executive Officer/Clerk of Court, by E. Thomas, Deputy Clerk

Case 2:23-cv-00870-DSF-JPR Document 1-2 Filed 02/03/23 Page 2 of 100 Page ID #:16

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Cedars-Sinai Health System and Cedars-Sinai Medical Center

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
John Doe, on behalf of himself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

  *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

  *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk

111 N. Hill Street, Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):* 22STCV41085

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Rachele R. Byrd, Wolf Haldenstein, et al., 750 B Street, Suite 1820, San Diego, CA 92101, 619-239-4599

| DATE: *(Fecha)* | 12/30/2022 | Clerk, by David W. Slayton, Executive Officer/Clerk of Court *(Secretario)* | E. Thomas | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Electronically FILED by Superior Court of California, County of Los Angeles on 12/30/2022 03:38 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Drew,Deputy Clerk

1  RACHELE R. BYRD (190634)
   FERDEZA ZEKIRI (335507)
2  **WOLF HALDENSTEIN ADLER**
   **  FREEMAN & HERZ LLP**
3  750 B Street, Suite 1820
   San Diego, CA 92101
4  Telephone: (619) 239-4559
   Facsimile: (619) 234-4599
5  byrd@whafh.com
   zekiri@whafh.com
6  
   *Attorneys for Plaintiff*
7  
8  
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9  
                     IN AND FOR THE COUNTY OF LOS ANGELES
10 
11 JOHN DOE, on behalf of himself and all          ) Case No. 22STCV41085
   others similarly situated,                      )
12                                                  )
                  Plaintiff,                        ) **CLASS ACTION COMPLAINT FOR:**
13                                                  ) **1.   Violations of the California Invasion**
                                                    )       **of Privacy Act (Cal. Penal Code**
14             v.                                    )       **§§ 630, 631, *et seq.*);**
                                                    ) **2.   Violations of the California Invasion**
15                                                  )       **of Privacy Act (Cal. Penal Code**
                                                    )       **§ 632, *et seq.*);**
16 CEDARS-SINAI HEALTH SYSTEM and                   ) **3.   Invasion of Privacy/Intrusion Upon**
   CEDARS-SINAI MEDICAL CENTER,                     )       **Seclusion – California Constitution**
17                                                  )       **and Common Law;**
                  Defendants.                       ) **4.   Breach of Implied Contract;**
18                                                  ) **5.   Breach of Contract -- Third Party**
                                                    )       **Beneficiaries;**
19 _____          ) **6.   Breach of Implied Covenant of Good**
                                                           **Faith and Fair Dealing;**
20                                                      **7.   Negligence;**
                                                        **8.   Violations of California's**
21                                                           **Confidentiality of Medical**
                                                             **Information Act (Cal. Civ. Code § 56,**
22                                                           ***et seq.*);**
                                                        **9.   Violations of the Unfair Competition**
23                                                           **Law (Cal. Bus. & Prof. Code § 17200,**
                                                             ***et seq.*)**
24 
25 
                                                        **CLASS ACTION**
26 
                                                        **JURY TRIAL DEMANDED**
27 
28

Plaintiff John Doe ("Plaintiff") brings this class action complaint against Cedars-Sinai Health System and Cedars-Sinai Medical Center (collectively, "Cedars-Sinai" or "Defendant") on behalf of himself and all others similarly situated. Plaintiff alleges, upon personal knowledge as to his own actions and upon his counsel's investigation and information and belief as to all other matters, as follows:

## I.   INTRODUCTION

1.       Defendant Cedars-Sinai is a major healthcare organization based in Los Angeles, California. It maintains a website and a mobile application or "app" (together, the "Website") through which it communicates with its more than one million patients.[1] It encourages patients to use this Website to research their medical symptoms and health issues, identify doctors who can treat their specific conditions, make appointments with those doctors, and take other actions related to their personal health care. When doing this, patients convey highly private information, including medical information, through the Website.

2.       Plaintiff and all other members of the proposed class (defined *infra*) are patients who communicated with Cedars-Sinai through its Website. They shared information, including their Protected Health Information ("PHI") and Personally Identifiable Information ("PII"),[2] with the reasonable belief that Cedars-Sinai would take appropriate steps to maintain the privacy of these communications.

3.       Instead, Cedars-Sinai took the opposite course. Without these patients' knowledge or consent, Defendant shared their Private Information with unrelated companies including Facebook/Meta,[3] Google, Microsoft Bing, and other marketing and social media platforms or businesses.

---

[1]       *See* https://www.cedars-sinai.org/about.html (last visited Dec. 29, 2022). The home page of this Website can be found at https://www.cedars-sinai.org/. Through it, one can reach Cedars-Sinai's patient portal, the home page of which is https://www.cedars-sinai.org/mycslink.html.
[2]       This information is collectively and severally referred to as "Private Information."
[3]       In October 2021, Facebook, Inc. changed its name to Meta, Inc. Unless otherwise indicated, Facebook, Inc. and Meta, Inc. are referenced collectively herein as "Meta."

4.     Cedars-Sinai transmitted to third parties portions of the patients' private communications with it through pieces of tracking code that it embedded in its Website, for the sole purpose of sharing such information with marketing entities. This code served as real time wiretaps on patients' communications.

5.     Cedars-Sinai's goal in installing the tracking code was not to provide any benefit to its patients but only to itself. Cedars-Sinai installed the tracking code to obtain insight about how its patients and potential patients use its Website.

6.     By installing the tracking code, moreover, Cedars-Sinai enabled the marketing entities to use patients' Private Information to target them with advertising by yet other, unrelated businesses. By way of illustration, if a patient made an appointment with a doctor for treatment of cancer, the tracking code Cedars-Sinai put on its Website conveyed that information to Meta, which in turn allowed Meta to include that patient in marketing target groups that it offered to its other advertising clients who wanted to market to cancer patients.

7.     Cedars-Sinai's conduct in sharing patients' health information and other personally identifiable information violates an array of laws and duties. Plaintiff thus sues, on behalf of himself and a class of all persons who used Defendant's Website at any time when tracking code able to share data with third parties for marketing or web-site analytics purposes was present on the Website (the "Class"), seeking remedies for: violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, *et seq.* and the privacy rights protected by California's Constitution and common law; breaches of implied contractual promises by Cedars-Sinai; breach of Cedars-Sinai's contract with Meta, of which Class members are third-party beneficiaries; violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*; and other tortious acts as described herein.

## II.     JURISDICTION & VENUE

8.     This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10. The total amount of damages incurred by Plaintiff and the Class in the

aggregate exceeds the $25,000 jurisdictional minimum of this Court. Further, the amount in controversy as to Plaintiff individually does not exceed $75,000.

9.     This Court has jurisdiction over Defendant because it is located within Los Angeles County, California.

10.     This action does not qualify for federal jurisdiction under the Class Action Fairness Act because the home-state controversy exception under 28 U.S.C. § 1332(d)(4)(B) applies to this action because (1) more than two-thirds of the members of the proposed Class are citizens of the State of California, and (2) Defendant is a citizen of the State of California.

11.     Venue is proper in this Court under California Bus. & Prof. Code § 17203 and Code of Civil Procedure §§ 395(a) and 395.5 because Defendant is headquartered within this Court's jurisdiction and because a substantial part of the events giving rise to Plaintiff's claims occurred in this County.

**III.   PARTIES**

12.     Plaintiff John Doe is a resident of the City of Los Angeles, California. Plaintiff is a healthcare consumer who used Defendant's Website, https://www.cedars-sinai.org/, including its patient portal available through the Website, My CS-Link, to communicate personal medical information to Defendant. Defendant wrongfully shared Plaintiff's personal information, including private medical information, without Plaintiff's knowledge or consent.

13.     Plaintiff Doe is also a Facebook user who has used the "Keep Me Logged In" feature of his Facebook account. He has noticed an increase in the number of health related ads that he has received and he has received ads relating to the condition about which he communicated on Defendant's Website.

14.     Defendant Cedars-Sinai Medical Center is a private non-profit healthcare organization headquartered in Los Angeles, California.[4] According to publicly available sources,

---

[4]     Cedars Sinai, ABOUT US, https://www.cedars-sinai.org/about.html?s_kwid=&&origin=sitelink&gclid=CjwKCAjwwdWVBhA4EiwAjcYJECi4Wk4AtxtCGg0bqj7uO8Eh4YM8Iv8sVqvH2Yu6qpyj9q4Bj4--oBoCHQ4QAvD_BwE&gclsrc=aw.ds (last visited Dec. 28, 2022).

it generated over $3.8 billion in revenue in 2020.[5]

15.     Defendant Cedars-Sinai Health System is a California non-profit corporation and the parent organization of Cedars-Sinai Medical Center. Cedars-Sinai Health System is the sole corporate member of Cedars-Sinai Medical Center. The Website states that "[t]he Cedars-Sinai Health System ("CSHS") website is owned and operated by Cedars-Sinai Health System."[6]

## IV.     STATEMENT OF FACTS

### A.     Cedars-Sinai's Inclusion of Tracking Codes on Its Website

16.     Defendant Cedars-Sinai is a Los Angeles health services organization which sees over a million patients per year.[7] One of its primary means of communication with those patients is through its Website. In a brazen violation of law and of its own promises, it embedded code on its Website designed to facilitate eavesdropping by Meta and other unrelated third parties.

17.     The home page of Cedars-Sinai's Website provides highly visible links that encourage visitors to "Become a Patient," "Make an appointment," "Find a Doctor," use the "Health Library," log into the patient portal, My CS-Link, and take other actions. Use of these links can require patients to transmit information about: the specialty, gender and location of doctors they are seeking; their own or their family members' medical conditions; and/or take other actions that necessarily transmit significant private information.

18.     What was not visible on the Website, although Cedars-Sinai placed it there, was tracking code that transmitted patients' selections and actions on the Website to Meta, Google and other entities that provide marketing services to Cedars-Sinai.

19.     Defendant shared patients' communications with at least the following third parties: Meta, Google, Microsoft (Bing), Broadcastmed.innocraft.cloud (a healthcare media company) and Marketo (an automated marketing services entity). On information and belief,

---

[5]     ProPublica, CEDARS-SINAI MEDICAL CENTER, https://projects.propublica.org/nonprofits/organizations/951644600 (last visited Dec. 28, 2022).

[6]     See https://www.cedars-sinai.org/privacy-policy.html#:~:text=The%20Cedars-Sinai%20Health%20System%20%28%22CSHS%22%29%20website%20is,owned%20and%20operated%20by%20Cedars-Sinai%20Health%20System (last visited Dec. 29, 2022).

[7]     Cedars Sinai, ABOUT US, https://www.cedars-sinai.org/about.html (last visited Dec. 28, 2022).

each of these offered marketing, rather than any medically-related, services and none had any right to patients' data.

20.     At some point between July 6 and July 10, 2022, Cedars-Sinai removed Meta's code from its Website, but the harm has already been done. Moreover, other marketing tracking code from, for example, Google and Microsoft, remains.

21.     Plaintiff and Class members never consented, agreed to, authorized, or otherwise permitted Defendant to disclose any of their Private Information to any of these entities.

**B.     Types of Tracking Code Through Which Defendant Shared Private Patient Information**

**1.     The Meta Pixel**

22.     In order to increase its advertising revenue, Meta, the world's largest and most profitable social networking company, devises tools to identify which users may be interested in specific products, which allows it to enable its advertising clients to target their advertising to particular groups with those interests. One such tool is the "Meta Pixel" (formerly known as the "Facebook Pixel" and referred to herein as the "Pixel"), a piece of code written by Meta to enable itself and its business customers to track and share data about customer transactions.

23.     Cedars-Sinai chose to include the Pixel on its Website.

24.     While the Pixel was on the Website, when a patient entered the following information, the information would simultaneously be shared with Meta:

- The types of medical treatment the patient sought;
- The name, gender, language, and specialty of the physician(s) that the patient specified when seeking treatment;
- The patient's searches relating to COVID-19 information and treatment;
- The locations where the patient sought treatment; and
- That a patient clicked to make a telephone call in order to schedule an appointment through the site.

25.     By way of illustration, if a patient selected the "Find a Doctor" button on the main page of Defendant's Website, they would be directed to a page where they could search for

doctors by using keywords such as condition, specialty, or by name, gender, location and language, among other things, as shown below.



26.     As the patient submitted their search, the terms of the search would be simultaneously transmitted to Meta. The patient would then be directed to a search results page, like the one shown below:



27.     When the patient then selected a doctor on this page by clicking on the link for that doctor, the fact of that selection was simultaneously transmitted to Meta.

28.     If the patient then clicked on a button to call the doctor's office and make an appointment, because of the Pixel, Meta would immediately receive notification of that click, before the transmission of the communication to Defendant was complete.

29.     Meta's own documentation makes clear just how much tracking of private information the Pixel does. It describes the Pixel as code that Meta's business customers can put on their website to "[m]ake sure your ads are shown to the right people. ***Find … people who have visited a specific page or taken a desired action on your website***." (Emphasis added.)[8]

30.     Meta instructs such business customers that:

> Once you've set up the Meta Pixel, ***the Pixel will log when someone takes an action on your website***. Examples of actions include adding an item to their shopping cart or making a purchase. ***The Pixel receives these actions, or events***, which you can view on your Meta Pixel page in Events Manager. From there, you'll be able to see the actions that your customers take. ***You'll also have options to reach those customers again through future Facebook ads***.[9]

31.     Of course, in the healthcare context, it is medical specialists that users "add to their shopping cart." They make doctor's appointments rather than making purchases.

32.     The Pixel code enables Meta not only to help Cedars-Sinai with advertising to its own patients outside the Cedars-Sinai Website, but also to include individual patients among groups targeted by ***other*** Meta advertisers relating to the conditions about which patients communicated on Cedars-Sinai's Website.

33.     In other words, Meta sells advertising space by highlighting its ability to target users.[10] Meta can target users so effectively because it surveils user activity both on and off its

---

[8]     Meta, ABOUT META PIXEL https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Dec. 28, 2022).

[9]     *Id*. (Emphasis added.)

[10]    Meta, WHY ADVERTISE ON FACEBOOK, INSTAGRAM AND OTHER META TECHNOLOGIES, https://www.facebook.com/business/help/205029060038706 (last visited Dec. 28, 2022).

site.[11] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[12]

34.     Meta's Business Help Center explains:

Meta ***uses marketing data to show ads to people who are likely to be interested in them***. One type of marketing data is website events, which are ***actions that people take on your website***.[13]

35.     Meta's Terms and Conditions for Data Processing instructs businesses like Cedars-Sinai that Meta may correlate the data business customers provide with individual Facebook users:

You may provide Event Data to improve ad targeting and delivery optimization of your ad campaigns. ***We may correlate that Event Data to people who use Facebook Company Products*** to support the objectives of your ad campaign, improve the effectiveness of ad delivery models, and determine the relevance of ads to people. ***We may use Event Data to personalize the features and content (including ads and recommendations) that we show people on and off our Facebook Company Products.***[14]

36.     One service that Meta provides using the data obtained through the Pixel is "Core Audiences." This allows advertisers to select highly specific filters and parameters, such as demographics, behavior and interests, which Meta will use in directing their targeted advertisements.[15]

---

[11]     Meta, ABOUT META PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Dec. 29, 2022).

[12]     Meta, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited Dec. 29, 2022).

[13]     Meta, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (emphasis added) (last visited Dec. 29, 2022).

[14]     Facebook, FACEBOOK BUSINESS TOOLS TERMS, https://m.facebook.com/legal/technology_terms?locale=ne_NP&_rdr (emphasis added) (last visited Dec. 29, 2022).

[15]     FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting#:~:text=Core%20AudiencesDefine%20an%20audience,your%20business%2C%20online%20or%20off (last visited Dec. 29, 2022).

37.     Another of the services that Meta offers to companies that pay it for advertising is "Lookalike Audiences." That service relies on information that Meta obtains about end users, like Class members, based on their usage of websites, like Defendant's Website, where advertising customers, like Defendant, install Meta's code. As Oberlo explains:

> One of the great things about Meta advertising is "Lookalike Audiences." You can design Lookalike Audiences to reflect the characteristics of your best customers.
>
> **The code knows who did what on your website, and the Facebook platform can use that data to identify people who share similar traits as your visitors**. So if your "Big spenders" segment is full of 25-35 year old females who live in urban areas, **Facebook can create a Lookalike Audience of other** 25-35 year old females who live in urban areas and **who Facebook thinks might be interested in your products**.[16]

The process has been illustrated as follows:[17]



38.     Again, in the healthcare context, instead of tracking customers, the Pixel tracks patients, and instead of shopping preferences it tracks medical concerns.

---

[16]    Oberlo, A COMPLETE GUIDE TO FACEBOOK TRACKING FOR BEGINNERS, https://www.oberlo.com/blog/facebook-pixel (emphasis added) (last visited Dec. 29, 2022).
[17]    Instapage, WHAT IS THE META PIXEL AND WHAT DOES IT DO?, https://instapage.com/blog/meta-pixel (last visited Dec. 29, 2022).

39.     The foregoing all demonstrates that Meta can and does use unique patient information to facilitate the targeting of individuals like Plaintiff and all other Class members, whose personal information is sent to Meta – as Cedars-Sinai sent it – through the Pixel.

40.     The ready availability of this information on Meta's business pages also demonstrates that Defendant knew or was reckless in not knowing about this transmission and information before it installed the Pixel on its Website.

41.     In terms of technology, the Pixel is JavaScript code that sends Meta a collection of data whenever a person interacts in certain ways with a website. When a user selects a URL or clicks a button on a website, the browser sends a "GET Request" to the server, requesting that a particular webpage be loaded. When a user accesses a website hosting the Pixel, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission contains the original GET request sent to the host website, along with additional data that the Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's Website—Defendant's own code, and Facebook's embedded code that Defendant placed there.

42.     Again, an example illustrates the point. Take an individual who navigates to Defendant's Website and clicks on a tab for eating disorder information. When that tab is clicked, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because Cedars-Sinai utilizes the Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Facebook causes the browser to secretly duplicate the communication with Cedars-Sinai, transmitting it to Facebook's servers, alongside additional information that transcribes the key elements of the communication's content and the individual's identity.

43.     After collecting and intercepting this information, Meta processes it, analyzes it, and assimilates it into datasets including Core Audiences and Lookalike Audiences.

44.     Moreover, for any user that was a Facebook member and used Facebook on the same browser as they used the Website and had not logged out from Facebook, or used the commonly used "Keep Me Logged In" feature, the Pixel would transmit that individual's "c_user" number to Meta. A "c_user" number includes the user's unique Facebook identification number, which Meta uses to link an individual's activities and communications, including those on other websites like Cedars-Sinai's, to the user's identity and Meta account.[18]

45.     Here, when a patient transacted with Defendant's Website, due to the Pixel, an HTTP single communication session would be sent automatically from the patient's device to Meta. That communication revealed the provider information the patient is searching for, along with the patient's Facebook identification (c_user field).

46.     It is alarmingly easy to identify a person by their user identification number. Facebook states that the user ID can, "[a]llow someone with the ID to see your profile, including any public information."[19] Indeed, as detailed on the website Techwalla, "if you have someone's ID number and want to map it to a profile, you can go to www.facebook.com/[id-number], replacing "id-number" with the person's Facebook ID. When you have access to the profile, you'll see the profile page including the person's name they used when registering with Facebook."[20]

47.     That means that the private medical information a person enters onto Defendant's Website that is transferred with their c_user code can be easily linked to the person themselves.

48.     For example, when someone searches on Defendant's Website for a doctor who specializes in eating disorders, who is male, who is located near Beverly Hills, code is generated

---

[18]     Medium,     Seralahthan,     FACEBOOK     COOKIES     ANALYSIS, https://techexpertise.medium.com/facebook-cookies-analysis-e1cf6ffbdf8a#:~:text=browser%20session%20ends.-,%E2%80%9Cc_user%E2%80%9D,after%2090%20days%20of%20inactivity ("The     c_user cookie contains the user ID of the currently logged in user.") (last visited Dec. 29, 2022).
[19]     Facebook, HOW USERNAMES AND USER IDS ARE USED ON FACEBOOK PROFILES, https://www.facebook.com/help/211813265517027 (last visited Dec. 29, 2022).
[20]     Techwalla,     HOW TO FIND A PERSON FROM THEIR FACEBOOK     ID, https://www.techwalla.com/articles/how-to-find-a-person-from-their-facebook-id     (last     visited Dec. 29, 2022).

that transmits to Facebook: the doctor's name, the search terms "Eating disorders," "anorexia" and "bulimia," and the patient's unique Meta identifier, the c_user number.

49.     The code generated by such a search also includes the "fbp" cookie, which can be an indicator that the Facebook Pixel is present on the Website.

50.     The code generated by such a search also includes a "datr" cookie. This is a cookie that Meta uses to identify the web browser through which the user is communicating. It is a unique identifier and thus another means to identify individual users.

51.     The search code also reflects an "fr" cookie. This is a Meta identifier that is an encrypted combination of the c_user and datr cookies.

52.     By incorporating the code into its Website, Defendant facilitated this eavesdropping by Meta on patient communications.

53.     On information and belief, Defendant also included the Pixel on its password protected portal, My CS-Link.

54.     Cedars-Sinai included the Pixel on its Website despite knowing that it would allow Meta to identify individual users' communications containing PII and PHI.

### 2.     Google Analytics Tracking Code

55.     Cedars-Sinai also uses "Google Analytics," a web analytics service that allows website owners to track visitor actions on the Website and target them with personalized advertisements. The code for Google Analytics is still on Defendant's Website as of the filing of this Complaint. The code is both on the main pages and on those accessed after a user enters a user name and password. Google tracking code is also present when a person performs the same functions through Cedars-Sinai's smartphone app, as well as through the Website.

56.     Google's Analytics Help pages instruct health care providers like Defendant:

Google does not intend uses of Google Analytics to create obligations under the Health Insurance Portability and Accountability Act, as amended, ("HIPAA"), and makes no representations that Google Analytics satisfies HIPAA requirements. *If you are (or become) a Covered Entity or Business Associate*

*under HIPAA, you may not use Google Analytics for any purpose or in any manner involving Protected Health Information.*[21]

57.    Despite the above warning, Defendant embedded Google Analytics code on is Website.

58.    Google Analytics collects IP addresses of individual Internet users to facilitate and track Internet communications. It also collects various cookie-related user identifiers that allow it to link transactions on websites to individual users for the purpose of targeted advertising.

59.    The data is connected to the user's IP address, which is a unique address that identifies a device on the internet. IP addresses constitute personally identifiable information.

60.    For example, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") characterizes IP addresses as "direct identifiers," 45 C.F.R. § 164.514(e)(2)(B)(2)(xiv), and provides that "[a] covered entity may determine that health information is not individually identifiable health information if; … (2)(i) [t]he following identifiers of the individual or of relatives, employers, or household members of the individual, are removed: … (O) Internet Protocol (IP) address numbers." 45 C.F.R. § 164.514(b)(2)(i)(O). The only alternative to the removal of such information is that: "[a] person with appropriate knowledge of and experience with generally accepted statistical and scientific principles and methods for rendering information not individually identifiable: (i) [a]pplying such principles and methods, determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the information; and (ii) [d]ocuments the methods and results of the analysis that justify such determination." *Id.* at 45 C.F.R. § 164.514(b). On information and belief, these standards were not met here.

---

[21]    Google, ANALYTICS HELP, BEST PRACTICES TO AVOID SENDING PERSONALLY IDENTIFIABLE INFORMATION (PII), https://support.google.com/analytics/answer/6366371?hl=en#zippy=%2Cin-this-article (emphasis added) (last visited Dec. 29, 2022).

61.     Google offers an IP Anonymization tool for entities (like Defendant) using Google Analytics, so that end users (like Plaintiff and the Class members) will not have their full IP address reported and stored. Google's website explains, "The IP-masking feature in Universal Analytics sets the last octet of IPv4 user IP addresses and the last 80 bits of IPv6 addresses to zeros in memory shortly after being sent to Google Analytics. The full IP address is never written to disk in this case."[22] Google further states, "This feature is designed to help site owners comply with their own privacy policies or, in some countries, recommendations from local data protection authorities, which may prevent the storage of full IP address information."[23]

62.     Defendant does not use Google's IP Anonymization tool.

63.     As a result of Defendant's decision not to use the IP anonymization feature, Defendant transmits patients' full IP addresses to Google, meaning that communications are not anonymous, regardless of whether Google also placed ID cookies on the user's device.

64.     Like Meta's Lookalike Audiences, Google offers "Similar Audiences." Google explains on its website:

> To find similar segments, Google Ads looks at the millions of people searching on Google. …
>
> A similar segments list is created from a remarketing list or Customer Match list with at least 1,000 cookies **with enough similarity in search behavior to create a corresponding similar segment**.
>
> Website tag and rule-based remarketing lists, as well as Customer Match lists built from email addresses, mailing addresses, and/or phone numbers, can be used to generate similar segments.....[24]

(Emphasis added.)

---

[22]    Google, ANALYTICS HELP, IP MASKING IN UNIVERSAL ANALYTICS, https://support.google.com/analytics/answer/2763052?hl=en (last visited Dec. 29, 2022).
[23]    *Id.*
[24]    Google Ads Help, ABOUT SIMILAR SEGMENTS FOR SEARCH, https://support.google.com/google-ads/answer/7151628?hl=en#:~:text=To%20find%20similar%20audiences%2C%20Google,visitors%20on%20the%20original%20list (last visited Dec. 29, 2022).

65.    Google explains, for its marketing and developer clients:

In order for Google Analytics to determine that two distinct hits belong to the same user, a unique identifier, associated with that particular user, must be sent with each hit.

The analytics.js library accomplishes this via the Client ID field, a unique, randomly generated string that gets stored in the browsers cookies, so subsequent visits to the same site can be associated with the same user.

By default, analytics.js uses a single, first-party cookie named _ga to store the Client ID, but the cookie's name, domain, and expiration time can all be customized. Other cookies created by analytics.js include _gid, AMP_TOKEN and _gac_<property-id>. These cookies store other randomly generated ids and campaign information about the user.[25]

66.    For example, when a patient clicks on a link to a particular doctor, the code that is generated related to Google Analytics shows: the doctor's name, and various "cookies" that Google uses to track individual users. The doctor's specialty is readily available on Defendant's website, so conveying this information Google Analytics makes it easy to identify the medical condition for which the user is seeking a doctor. The Google Analytics cookies in the code generated by the search include strings beginning with "gid" and "cid" (Google Analytics' "Client ID") cookie, followed by strings of unique numbers Google uses to identify to the user's device.

67.    On the portions of the Website that are reached after a patient enters their password, Google tracking code that Defendant embedded similarly informs Google of each page that a patient clicks on, including those displaying doctor's names.

68.    This disclosure of patient information was unwarranted and improper.

### 3.    Microsoft Bing Tracking Software

69.    Defendant also placed tracking code created by Microsoft, called bat.bing, on its Website. bat.bing collects a Microsoft's Machine Unique Identifier (MUID cookie) from users.

---

[25] Google Analytics, COOKIES AND USER IDENTIFICATION, https://developers.google.com/analytics/devguides/collection/analyticsjs/cookies-user-id (last visited Dec. 29, 2022).

This cookie is a unique user identifier and remains active for one year. It is used for advertising, site analytics, and other operational purposes. Similar to Google Analytics, when a user clicks on a doctor's name, bringing them to that doctor's page, bat.bing passes the name, along with the MUID, to Microsoft.

### 4.    Additional Marketing Entities That Were Sent Patient Communications

70.    Defendant also placed code on its website that transmitted information regarding the patients' activity on the Cedars-Sinai website to the following marketing related entities. Again, the name of the hospital and doctor are transferred through the tracking code to the marketing partner.

### (a) Broadcastmed.innocraft.cloud

71.    According to its website: "BroadcastMed is a groundbreaking healthcare media company that plans, produces, and promotes engaging healthcare content in the clinical setting using data-driven solutions to optimize marketing initiatives."[26] Like the other marketing entities to which Cedars-Sinai transmitted patient communications, Broadcastmed is focused on use of patient information to drive marketing decisions. Its website further explains, "[t]he company's proprietary AI-driven data yields unrivaled healthcare industry insights to guide future marketing strategies and decisions for their clients." Transferring Patient information to such and entity would not be done for the patient's benefit, but for the marketer's.

72.    When a person clicks on a particular doctor on Defendant's Website, Broadcastmed's tracking code passes the doctor's name back to Broadcastmed.

### (b) Mktoresp.com

73.    Defendant also had tracking code on its website identified as "mktoresp.com." This appears to be a part of Marketo, which is a marketing automation service associated with Adobe.[27]

---

[26]    Broadcastmed, ABOUT US, https://www.broadcastmed.com/about-us (last visited Dec. 29, 2022).

[27]    Adobe Experience Cloud, THE DEFINITIVE GUIDE TO MARKETING AUTOMATION, https://www.marketo.com/definitive-guides/marketing-automation/ (last visited Dec. 29, 2022).

74. As with the tracking codes for Google, Microsoft, and Broadcastmed, this code transferred the name of the doctor that the patient clicked on to a third party, along with the user's IP address, without the patient's knowledge or consent. Marketo's default setting is to not anonymize IP addresses. On information and belief, Cedars-Sinai did not change the setting to anonymize the IP addresses. Cedars-Sinai had no legitimate reason for sharing such patient communications with this entity.

**C.    Class Members Had Multiple Bases for Reasonable Expectations of Privacy**

75. Plaintiff and Class members, as patients of Cedars-Sinai, had numerous reasons to expect that their communications with Defendant would be kept private. First, Cedars-Sinai never obtained their consent to share their Private Information for purposes unrelated to services that the patients requested.

76. Moreover, Cedars-Sinai never disclosed that it was doing so. The tracking code is designed to be invisible to a normal website user.

77. In addition, as detailed herein, an array of policies, state and federal statutes, and common understandings give rise to such reasonable expectations.

**D.    Many Policies and Regulations Demonstrate the Impropriety of Defendant's Sharing of Patient Information**

78. By sharing patient data with third parties, Defendant violated its own and Meta's privacy policies as well as government standards and regulations. Defendant knew of its responsibility to protect patient communications and ignored it to further its advertising goals.

**1.    Defendant's Violation of Its Privacy Policy**

79. Cedars-Sinai had a Privacy Policy through which it assured Class members that that their information would be protected and not shared for purposes unnecessary to services specifically requested by the patients.[28] This policy shows that Defendant knew it had a responsibility to protect patient information, rather than share it unnecessarily.

80. Defendant's Website's Privacy Policy states:

---

[28]    Cedars Sinai, PRIVACY POLICY, https://www.cedars-sinai.org/privacy-policy.html (last visited Dec. 29, 2022).

Personally identifiable information is information you provide that lets us know specific facts about you *so that we can respond to your requests*. Depending on the portion of the website you visit and the information you provide, this information could range from your name, address and ZIP code, which you provide in order to receive information from us about certain services, to specific health information that you provide to us on an admission form. *Personal information collected on our site is used only to allow us to fulfill your request for services.* For instance, if you use our online physical system to locate a specialist in your area, we use the information you provide to put you in touch with a physician. Similarly, if you complete an admission form that you download from our site and submit it to us, we use the information contained in your admission form for the purposes of admitting you to CSHS and to thereafter providing the services your physician prescribes. Another example relates to our gift shop. We collect personal information from you in order to complete transactions you request The information you provide may be furnished to a third party *in order to facilitate the transaction*. Or, you may submit personal information to us in response to an employment opportunity. *In each case, we use your personal information only for the purpose it is submitted to us*, which may include providing it to third parties with whom we have relationships *to deliver the information or services you request*.[29]

(Emphasis added.)

81.     This was demonstrably untrue, given that Defendant routinely and automatically transmitted and continues to transmit patients' data to third parties for marketing purposes. Such transmission is unnecessary to "fulfill [patients'] requests for services."

82.     Defendant's Privacy Policy also states:

*We also do everything reasonably possible to protect user information we collect. All of our users' information, not just the sensitive information, is restricted in our offices*. Only individuals who need the information to perform a specific job are granted access to personal information. Access to this information is password protected. Furthermore, all personnel having access to your personal information are kept up-to-date on our security and privacy practices.[30]

83.     Again, this was demonstrably false given the extent to which Defendant has unnecessarily shared patient communications with third parties.

84.     As to cookies, Defendant's Privacy Policy states:

---

[29]    *Id.*
[30]    *Id.*

We may place small data files, called "cookies," in your browser's file storage area of your computer's hard drive. Cookies are a standard Internet technology that allow us to both store and retrieve login information on a user's system. A cookie is a small text file that is stored on a site visitor's computer to gather and keep track of information related to you. These cookies automatically identify your browser *to our server* whenever you interact with a service provided on our website. Cookies can store your preferences through a password you select to access a web site. Cookies also help us review website traffic patterns and improve our site. Most browsers automatically accept these cookies, but you usually can change your browser setting to prevent the acceptance of cookies, but this may prevent you from using some of the features of our website. ***Information collected through cookies is not linked to any personally identifiable information***.[31]

85.    This is not true given that some of the cookies relating to tracking code on Defendant's Website can be linked to individual identities.

86.    As to log files, the Privacy Policy states:

We collect and log IP addresses in order to analyze site visitation trends and administer the website. An IP address is a number automatically assigned to your computer whenever you access the Internet. IP addresses allow computers and servers to recognize and communicate with one another. IP address information allows us to properly administer our system and gather ***aggregate*** information on visitors to our website help diagnose problems with our servers, and how our site is being used, including the pages visitors are viewing in the ***aggregate***. This ***aggregate*** information may be shared with third parties, such as our physicians, our suppliers and other businesses. ***To maintain your anonymity, we do not associate IP addresses with records containing personal information. In other words, IP addresses are not linked to personally identifiable information***.[32]

87.    The foregoing promises of confidentiality and anonymity were false and misleading given Defendant's incorporation into its website of code that shared patients' communications with Meta and other third parties. However, they gave Class members a reasonable expectation of privacy.

### 2.    Meta's Policies

88.    Meta's own policies were another source of assurance to Class members that Cedars-Sinai would not be sharing their data and another clear warning to Defendant that it

---

[31]    *Id*. (Emphasis added.)
[32]    *Id*. (Emphasis added.)

should not have shared its patients' data as it did. To begin, Meta's privacy policy states that "[w]e require Partners [*e.g.*, advertisers, like Cedars-Sinai, who send Meta information through Meta Business Tools] to have the right to collect, use and share your information before giving it to us."[33]

89.     In addition, Meta's contract with businesses that, like Cedars-Sinai, use its Business Tools, including the Pixel, requires that such businesses "represent and warrant that [they] (and any data provider that [they] may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of Business Tool Data."[34] Here, for the reasons discussed herein, Cedars-Sinai did not have the necessary legal rights and permissions to share the patient data that it did.

90.     The Facebook Business Tool Terms also provide, at Section 1(h), "***You will not share Business Tool Data with us that you know or reasonably should know*** is from or about children under the age of 13 *or that includes health*, financial information or other categories of sensitive information." Of course, Defendant did just that.

91.     In addition, the Facebook Business Tool Terms requires of businesses like Cedars-Sinai to:

> [R]epresent and warrant that you have provided robust and sufficiently prominent notice to users regarding the Business Tool Data collection, sharing and usage that includes, at a minimum: i. For websites, a clear and prominent notice on each web page where our pixels are used that links to a clear explanation (a) that third parties, including Facebook, may use cookies, web beacons, and other storage technologies to collect or receive information from your websites and elsewhere on the Internet and use that information to provide measurement services and target ads.

---

[33]     Meta, PRIVACY POLICY,   https://mbasic.facebook.com/privacy/policy/printable/   (last visited Dec. 29, 2022).
[34]     Facebook,   FACEBOOK   BUSINESS   TOOLS   TERMS,   Section   1(e), https://www.facebook.com/legal/businesstech?paipv=0&eav=Afb8lVB3IDvB3rFEMJQmgdaS2iOzEGlLXfl8Q71xM21q28VqYCBGQeF3XUqAnbXgoGU&_rdr (last visited Dec. 29, 2022).

92.     Cedars-Sinai did not give "robust" or "sufficiently prominent" notice that it would be using cookies or tracking code to share patients' Private Information with third parties, including Facebook, for marketing purposes.

93.     The various statements on Meta's website was one of the reasons that Class members had a strong expectation that the information they provided to Cedars-Sinai would not be provided to Facebook.

94.     The above policies are part of Meta's contract with Cedars-Sinai. Class members are the intended third party beneficiaries of this contract.

### 3.     Google's Policies Provided Additional Assurance of Confidentiality

95.     Google's Privacy Disclosure Statement is yet another reason that Defendant knew or should have known that its sharing data was improper.

96.     The Google Privacy Disclosure Policy provides:

> When you use Google Analytics on your site or application, you must disclose the use of Google Analytics and how it collects and processes data.[35]

97.     Defendant does not expressly mention "Google Analytics" on its website or make proper disclosure of the data that Defendant provides to Google through coding, and what that data is used for.

98.     Google's rules for advertisers also provide:

> We understand that users don't want to see ads that exploit their personal struggles, difficulties, and hardships, so we don't allow personalized advertising based on these hardships. Such personal hardships include health conditions, treatments, procedures, personal failings, struggles, or traumatic personal experiences. You also can't impose negativity on the user.[36]

99.     Google's rules for advertisers further state that the following should not be used in advertising:

---

[35]     Google, PRIVACY DISCLOSURES POLICY, https://support.google.com/analytics/answer/7318509?hl=en#:~:text=When%20you%20use%20Google%20Analytics,Safeguarding%20your%20data (last visited Dec. 29, 2022).

[36]     Google, ADVERTISING POLICIES HELP, PERSONALIZED ADVERTISING https://support.google.com/adspolicy/answer/143465?hl=en (last visited Dec. 29, 2022).

Personal health content, which includes:

- Physical or mental health conditions, including diseases, sexual health, and chronic health conditions, which are health conditions that require long-term care or management.
- Products, services, or procedures to treat or manage chronic health conditions, which includes over-the-counter medications and medical devices.
- Any health issues associated with intimate body parts or functions, which includes genital, bowel, or urinary health.
- Invasive medical procedures, which includes cosmetic surgery.
- Disabilities, even when content is oriented toward the user's primary caretaker.
  - **Examples**: Treatments for chronic health conditions like diabetes or arthritis, treatments for sexually transmitted diseases, counseling services for mental health issues like depression or anxiety, medical devices for sleep apnea like CPAP machines, over-the-counter medications for yeast infections, information about how to support your autistic child[.][37]

100.    Google's policies in this regard are indicative of a broader general public policy against using medical information for advertising, and are another reason that Plaintiff and Class members would reasonably expect Defendant to maintain the privacy of their information. Of course, if Defendant did not intend to advertise to patients based on their having health conditions that cause them to be patients, it would have had no reason to include Google Analytics on its Website at all.

**4.    Federal Warning on Tracking Codes on Healthcare Websites.**

101.    Beyond Defendant's own policies, and those of Meta and Google, the government has issued guidance warning that tracking code like Meta Pixel and Google Analytics may come up against federal privacy law when installed on healthcare websites. The statement, titled Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates

---

[37]    *Id*.

(the "Bulletin"), was recently issued by the Department of Health and Human Services' Office for Civil Rights ("OCR").[38]

102.    Healthcare organizations regulated under the Health Insurance Portability and Accountability Act (HIPAA) may use third-party tracking tools, such as Google Analytics or Meta Pixel, in a limited way, to perform analysis on data key to operations. They are not permitted, however, to use these tools in a way that may expose patients' protected health information to these vendors. The Bulletin explains:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures***.[39]

103.    The bulletin discusses the types of harm that disclosure may cause to the patient:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, ***discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI***. Such disclosures can reveal incredibly sensitive information about an individual, ***including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment***. While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, ***because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.***[40]

104.    Plaintiff and Class members face just the risks about which the government expresses concern. Defendant has passed along Plaintiff's and Class members' search terms about health conditions for which they seek doctors; their contacting of doctors to make

---

[38]    HHS.gov, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Dec. 29, 2022).

[39]    *Id.* (Emphasis added.)

[40]    *Id.* (Emphasis added.)

appointments; the names of their doctors; the frequency with which they take steps relating to obtaining healthcare for certain conditions; and where they seek medical treatment. This information is, as described by the OCR in its bulletin, "highly sensitive."

105.     The Bulletin goes on to make clear how broad the government's view of protected information is. It explains:

> This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, *or any unique identifying code*.[41]

106.     Crucially, that paragraph in the government's Bulletin continues:

> *All such [individually identifiable health information ("IIHI")] collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services.* This is because, *when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care*.[42]

107.     This is further evidence that the data that Defendant chose to share is protected Personal Information. The sharing of that information was a violation of Class members' rights.

### 5.     Defendant's Violation of HIPAA

108.     Defendant's disclosure of Plaintiff's and Class members' Private Information to entities like Facebook and Google also violated HIPAA. HIPAA provided Plaintiff and Class members with another reason to believe that the information they communicated to Defendant through its Website would be protected, rather than shared with third-parties for marketing purposes. Moreover, Defendant's violation of HIPAA is a violation of law that forms the one of the bases of its violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq*.

---

[41]     *Id*. (Emphasis added.)
[42]     *Id*. (Emphasis added.)

109.    HIPAA's Privacy Rule defines "individually identifiable health information" as "a subset of health information, including demographic information collected from an individual" that is (1) "created or received by a health care provider;" (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and either (i) "identifies the individual;" or (ii) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

110.    HIPAA prohibits health care providers from "us[ing] or disclos[ing] 'protected health information' except as permitted or required by" the HIPAA Privacy Rule. 45 C.F.R. § 164.502.

111.    "A covered entity may determine that health information is not individually identifiable health information only if" either "a person with appropriate knowledge of and experience with generally accepted statistical and scientific methods for rendering information not individually identifiable: a) applying such principles" determines that the risk is "very small" that the information could be used alone, or in combination with other information, to identify individuals, and documents the methods that justifies such a determination, or identifiers are removed that include: Internet Protocol (IP) address numbers; account numbers; URLs, device identifiers, and "any other unique identifying number, characteristic or code," except codes assigned by the healthcare organization to allow itself to reidentify information from which it has removed identifying information.

112.    Even the fact that an individual is receiving a medical service, *i.e.*, is a patient of a particular entity, can be Protected Health Information. The Department of Health and Human Services has instructed health care providers that, while identifying information alone is not necessarily PHI if it were part of a public source such as a phonebook because it is not related to health data:

If such information was listed with health condition, health care provision or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI.[43]

113.     Consistent with this restriction, the HHS has issued marketing guidance that provides that:

> With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing. … Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients to third parties without obtaining authorization from each person on the list.[44]

114.     Here, Defendant provided patient information to third parties in violation of this rule.

115.     Commenting on a June 2022 report discussing the use of the Meta Pixel by hospitals and medical centers, David Holtzman, a health privacy consultant and a former senior privacy adviser in HHS OCR, which enforces HIPAA, stated, "I am deeply troubled by what [the hospitals] are doing with the capture of their data and the sharing of it … ***It is quite likely a HIPAA violation.***"[45]

116.     Defendant's placing of the third-party tracking code on its Website is a violation of Class members' privacy rights under federal law. While Plaintiff does not bring a claim under HIPAA itself, this violation evidences Defendant's wrongdoing as relevant to other claims.

**E.     Plaintiff's and Class Members' Private Information Had Financial Value**

117.     Plaintiff's private data has economic value. Indeed, Meta's, Google's and others' practices of using such information to package groups of people as "Lookalike Audiences" and

---

[43]     HHS.gov, GUIDANCE REGARDING METHODS FOR DE-IDENTIFICATION OF PROTECTED HEALTH INFORMATION IN ACCORDANCE WITH THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) PRIVACY RULE, https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html (last visited Dec. 29, 2022).

[44]     HHS.gov, MARKETING, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html (last visited Dec. 29, 2022).

[45]     Advisory Board, 'DEEPLY TROUBLED': SECURITY EXPERTS WORRY ABOUT FACEBOOK TRACKERS ON HOSPITAL SITES, https://www.advisory.com/daily-briefing/2022/06/17/data-trackers (emphasis added) (last visited Dec. 29, 2022).

similar groups and selling those packages to advertising clients demonstrates the financial worth of that data.

118.    Data harvesting is the fastest growing industry in the nation. As software, data mining, and targeting technologies have advanced, the revenue from digital ads and the consequent value of the data used to target them have risen rapidly.

119.    Consumer data is so valuable that some have proclaimed that data is the new oil. Between 2016 and 2018, the value of information mined from Americans increased by 85% for Facebook and 40% for Google. Overall, the value internet companies derive from Americans' personal data increased almost 54%. Conservative estimates suggest that in 2018, Internet companies earned $202 per American user. In 2022, that value is expected to be $200 billion industry wide, or $434 per user, also a conservative estimate.

120.    As to health data specifically, as detailed in an article in Canada's National Post:

> As part of the multibillion-dollar worldwide data brokerage industry, health data is one of the most sought-after commodities. De-identified data can be re identified   (*citing* https://www.nature.com/articles/s41467-019-10933-3/ )   and brazen   decisions   to   release   records   with   identifiable   information (citing https://www.wsj.com/articles/hospitals-give-tech-giants-access-to-detailed-medical-records-11579516200?mod=hp_lista_pos3 )   are   becoming commonplace).[46]

121.    Further demonstrating the financial value of Class members' medical data, CNBC has reported that hospital executives have received a growing number of bids for user data:

> Hospitals, many of which are increasingly in dire financial straits, are weighing a lucrative new opportunity: selling patient health information to tech companies.

> Aaron Miri is chief information officer at Dell Medical School and University of Texas Health in Austin, so he gets plenty of tech start-ups approaching him to pitch deals and partnerships. Five years ago, he'd get about one pitch per quarter. But these days, with huge data-driven players like Amazon and Google making incursions into the health space, and venture money flooding into Silicon Valley start-ups aiming to bring machine learning to health care, the cadence is far more frequent.

---

[46]    National Post, IRIS KULBATSKI: THE DANGERS OF ELECTRONIC HEALTH RECORDS, February   26,   2020,   https://nationalpost.com/opinion/iris-kulbatski-the-dangers-of-electronic-health-records (last visited Dec. 29, 2022).

"It's all the time," he said via phone. "Often, once a day or more."

\*   \*   \*

[H]ealth systems administrators say [the data] could also be used in unintended or harmful ways, like being cross-referenced with other data to identify individuals at higher risk of diseases and then raise their health premiums, or to target advertising to individuals.[47]

122.    The CNBC article also explained:

De-identified patient data has become its own small economy: There's a whole market of brokers who compile the data from providers and other health-care organizations and sell it to buyers. Just one company alone, IQVIA, said on its website that it has access to more than 600 million patient records globally that are nonidentified, much of which it accesses through provider organizations. The buyers, which include pharma marketers, will often use it for things like clinical trial recruiting

But hospital execs worry that this data may be used in unintended ways, and not always in the patient's best interest.

\*   \*   \*

Tech companies are also under particular scrutiny because they already have access to a massive trove of information about people, which they use to serve their own needs. For instance, the health data Google collects could eventually help it micro-target advertisements to people with particular health conditions. Policymakers are proactively calling for a revision and potential upgrade of the health privacy rules known as HIPAA, out of concern for what might happen as tech companies continue to march into the medical sector.[48]

123.    Time Magazine similarly, in an article titled, HOW YOUR MEDICAL DATA FUELS A HIDDEN MULTI-BILLION DOLLAR INDUSTRY, referenced the "growth of the big health data bazaar," in which patients' health information is sold. It reported that:

[T]he secondary market in information unrelated to a patient's direct treatment poses growing risks, privacy experts say. That's because clues in anonymized patient dossiers make it possible for outsiders to determine your identity, especially as computing power advances in the future.[49]

---

[47]    CNBC, HOSPITAL EXECS SAY THEY ARE GETTING FLOODED WITH REQUESTS FOR YOUR HEALTH DATA, https://www.cnbc.com/2019/12/18/hospital-execs-say-theyre-flooded-with-requests-for-your-health-data.html (last visited Dec. 29, 2022).
[48]    Id.
[49]    Time, HOW YOUR MEDICAL DATA FUELS A HIDDEN MULTI-BILLION DOLLAR INDUSTRY, https://time.com/4588104/medical-data-industry/ (last visited Dec. 29, 2022).

124.    Cedars-Sinai gave away Plaintiff's and Class members' communications and transactions on its Website without permission. The unauthorized access to Plaintiff's and Class members' private and Personal Information has diminished the value of that information, resulting in harm to Defendant's Website users.

## V.    CLASS ACTION ALLEGATIONS

125.    Plaintiff brings this action on his own behalf and as a class action, pursuant to California Code of Civil Procedure Section 382, on behalf of the following class:

> All persons residing in California who used Defendant's Website at any time when tracking code able to share data for marketing or website analytics purposes was present.

126.    This action is properly maintainable as a class action.

127.    Plaintiff reserves the right under California Rules of Court, rule 3.765 to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

128.    <u>Numerosity</u>: The Class is so numerous that joinder of all members would be impracticable. While Plaintiff does not know the exact number of Class members, Cedars-Sinai represents that it sees over 1 million patients per year, and on, information and belief, a significant proportion of those patients use Defendant's Website.

129.    <u>Commonality and Predominance</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, are the following:

- Whether Defendant had a duty not to share the PHI/PII of Plaintiff and Class members with unauthorized third parties;

- Whether Defendant had a duty not to use the PHI/PII of Plaintiff and Class members for non-healthcare purposes;

- Whether information that Defendant shared with third parties like Meta constituted PHI and/or PII;

- Whether Defendant disclosed to Plaintiff and Class members that their PHI/PII would be shared with third parties unrelated to services that they specifically requested;

- Whether Defendant engaged in unfair, unlawful, or deceptive acts or practices by sharing the PHI/PII of Plaintiff and Class members with unrelated third parties such as Meta;

- Whether Plaintiff and Class members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

- Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendant's sharing of their PHI/PII with unrelated third parties such as Meta;

- Whether Defendant's disclosure of Plaintiff's and Class members' PHI/PII constituted an intrusion upon seclusion;

- Whether Defendant's disclosure of Plaintiff's and Class members' PHI/PII was unfair, deceptive and/or unlawful and thus a violation of California's statutory prohibition of unfair competition.

- Whether and the extent to which Defendant's conduct harmed Plaintiff and Class members.

130.    Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other member, was exposed to virtually identical conduct and now suffers from the same violations of the law as other members of the Class.

131.    Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate. Defendant's policies and practices challenged herein apply to and affect Class members uniformly and

CLASS ACTION COMPLAINT

Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

132.    Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class members. Plaintiff seeks no relief that is antagonistic or adverse to the Class members and the infringement of the rights and the damages they have suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

133.    Superiority and Manageability: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against a large corporation, like Defendant. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

134.    The nature of this action and the nature of laws available to Plaintiff and Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

135.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

136.    Adequate notice can be given to Class members directly using information maintained in Defendant's records.

137.    Unless a Class-wide injunction is issued, Defendant may continue to illegally provide the PHI/PII of its patients to unrelated third parties.

138.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for the Defendant. The Defendant has acted, or has refused to act, on grounds generally applicable to the Class, making final injunctive relief on behalf of the Class as a whole appropriate.

139.    Questions of law and fact common to the members of the Class predominate over any questions affecting any individual member, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the California Invasion of Privacy Act
### (Cal. Penal Code §§ 630, 631, *et seq*. ("CIPA"))

140.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

141.    California's Invasion of Privacy Act, California Penal Code 631(a) provides a remedy against, *inter alia*:

> ***Any person who*** … ***intentionally taps***, or ***makes any unauthorized*** connection, ***whether*** physically, ***electrically***, …, or otherwise, with any telegraph or telephone wire, line, cable, or instrument … ***or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads***, or attempts to read, or to learn the contents or meaning of any message, report, or communication ***while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state***; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, ***or who aids, agrees with, employs, or***

*conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section*,

142.    Defendant is a person for the purposes of this law.

143.    Here, Defendant "intentionally tap[ped] … **or *ma[de] [an] unauthorized* connection**" with respect to Class members' communications by placing third party tracking code on its Website, without "the consent of all parties" including Plaintiff, and thereby violated CIPA.

144.    Defendant also "***aid[ed], agree[d] with, employ[d], or conspire[d] with***" Meta, Google, and other third parties providing marketing services by placing their third-party tracking code on its Website, and allowing such entities; to "tap" communications on its website without "the consent of all parties" including Plaintiff, and thereby violated CIPA.

145.    Defendant facilitated the interception and simultaneous transmission to Meta, Google, and others of Plaintiff's and other Class members' PII and PHI while the information was "in transit." As a patients typed communications into Defendant's website, as a result of the Meta Pixel and other tracking codes that Defendant placed there, their requests were simultaneously redirected to Facebook while they were still on their way to Defendant.

146.    The information communicated between patients and Cedars-Sinai, a Los Angeles healthcare system, was transmitted to or from the state of California. The information was wiretapped "***while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state*.**"

147.    Redirection of data as a result of tracker coding before that data reaches its originally intended recipient (here, Cedars-Sinai) does not constitute a separate communication for the purposes of exclusion from CIPA coverage.

148.    Cedars-Sinai enabled non-parties to the communications to "read" the communications for the purposes of the statute. For example, Meta could see which individual searched for doctors with particular specialties, what conditions they researched, and when and where they made appointments.

149.    Cedars-Sinai facilitated this communication "without authorization" of Class members because it did not give Class members any hint that the transmission was happening. Indeed, Cedars-Sinai's own privacy policy stated that "personal information" would only be used "for the purpose it is submitted to us, *which may include providing it to third parties with whom we have relationships to deliver the information or services you request*."[50] (Emphasis added.) Class members did not *request* that Defendant and third parties target them with advertising that might be related to their health conditions.

150.    Cal. Penal Code § 637.2(a) provides:

> Any person who has been injured by a violation of this chapter [including Penal Code §§ 630 and 631] may bring an action against the person who committed the violation for the greater of the following amounts:
>
> > (1)    Five thousand dollars ($5,000) per violation.
> > (2)    Three times the amount of actual damages, if any, sustained by the plaintiff.

151.    Cal. Penal Code § 637.2(b) provides that "[a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

152.    Cal. Penal Code § 637.2(c) provides, "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

153.    Defendant is therefore liable to Plaintiff and the Class for, at a minimum, statutory damages of $5,000 per violation, and Plaintiff and Class members are also entitled to injunctive relief.

## SECOND CAUSE OF ACTION
### Violation of the California Invasion of Privacy Act
### (Cal. Penal Code § 632, *et seq*. ("CIPA"))

154.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

155.    Cal. Penal Code § 632 provides, in relevant part, that it is unlawful to "intentionally and without the consent of all parties to a confidential communication," "use[] [a]

---

[50]    *See* https://www.cedars-sinai.org/privacy-policy.html (last visited Dec. 29, 2021).

recording device to … record the confidential communication." As used in the statute "'confidential communication' means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

156.     The written transmission of information about Plaintiff's and Class members' searches and clicks on its Website as described above is a recording of those communications. The code is a "recording device."

157.     Defendant did not have Plaintiff's or other Class members' consent to record their communications.

158.     Cal. Penal Code § 637.2(a) provides:

Any person who has been injured by a violation of this chapter [including Penal Code § 632] may bring an action against the person who committed the violation for the greater of the following amounts:

(1)     Five thousand dollars ($5,000) per violation.
(2)     Three times the amount of actual damages, if any, sustained by the plaintiff.

159.     Cal. Penal Code § 637.2(b) provides that "[a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

160.     Cal. Penal Code § 637.2(c) provides, "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

161.     Defendant is therefore liable to Plaintiff and the Class for, at a minimum, statutory damages of $5,000 per violation, and Plaintiff and Class members are also entitled to injunctive relief.

### THIRD CAUSE OF ACTION
**Invasion of Privacy/Intrusion upon Seclusion in
Violation of California Common Law and the California Constitution, Art. 1, § 1**

162.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

163.    Plaintiff and Class members have a legally protected privacy interest in the PHI and PII that they enter into Defendant's Website and are entitled to the protection of their information and property against unauthorized access.

164.    Plaintiff and Class members reasonably expected that their Private Information would be protected and secure from unauthorized parties, and that it would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

165.    Defendant unlawfully invaded the privacy rights of Plaintiff and Class members by: (a) disclosing their private, and personal information to unauthorized parties in a manner that is highly offensive to a reasonable person; and (b) disclosing their private and personal information to unauthorized parties without the informed and clear consent of Plaintiff and Class members, including but not limited to including the Meta Pixel and other tracking code on its Website that transfer information entered and records of actions taken by patients on Defendant's Website to unrelated entities. This invasion into the privacy interest and seclusion of Plaintiff and Class members is serious and substantial.

166.    In willfully sharing Plaintiff's and Class members' Personal Information, Defendant acted in reckless disregard of their privacy rights.

167.    Defendant violated Plaintiff's and Class members' right to privacy under California law, including, but not limited to California common law and Article 1, Section 1 of the California Constitution and the California Consumer Privacy Act.

168.    As a direct and proximate result of Defendant's unlawful invasions of privacy, Plaintiff's and Class members' private, personal, and confidential information has been accessed or is at imminent risk of being accessed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and proposed Class members have suffered injuries as a result of Defendant's unlawful invasions of privacy and are entitled to appropriate relief.

169.    Plaintiff and Class members are entitled to injunctive relief as well as actual and punitive damages.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Contract**

170.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

171.     Defendant offered use of its Website to Plaintiff and members of the Class. In exchange, Defendant received benefits in the form of patients making appointments with Defendant's doctors, obtaining treatment at Defendant's hospitals and/or other valuable consideration, *e.g.*, access to their private and personal data.

172.     Defendant acknowledged these benefits and accepted or retained them.

173.     In using Defendant's Website, Plaintiff and Class members continually provide Defendant with their valuable private and personal information.

174.     By providing that information, and upon Defendant's acceptance of that information, Plaintiff and Class members, on the one hand, and Defendant, on the other, entered into implied contracts, separate and apart from Defendant's terms of service, under which Defendant agreed to and was obligated to take reasonable steps to secure and safeguard that sensitive information.

175.     All parties understood that such security was essential to Defendant's line of business—the provision of medical information and services.

176.     Under those implied contracts, Defendant was obligated to provide Plaintiff and Class members with a Website that was suitable for its intended purpose of exchanging sensitive and other healthcare information rather than a Website that provided patient information to third parties including Meta and that tracks its users' personal data for commercial purposes.

177.     Without such implied contracts, Plaintiff and Class members would not have used Defendant's Website and would not have conferred benefits on Defendant.

178.     Plaintiff and Class members fully performed their obligations under these implied contracts.

179.     As described throughout, Defendant did not take reasonable steps to safeguard Plaintiff's and Class members' private information. In fact, Defendant willfully violated those privacy interests by placing third party tracking code on its Website.

180.     Because Defendant failed to take reasonable steps to safeguard Plaintiff's private information, Defendant breached its implied contracts with Plaintiff and Class members.

181.     Accordingly, Plaintiff, on behalf of himself and Class members, seeks an order declaring that Defendant's conduct constitutes breach of implied contract, and awarding them damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Contract – Third-Party Beneficiaries**

182.     Plaintiff incorporates the foregoing allegations as if set forth fully herein.

183.     Defendant entered into an agreement (the "Facebook Business Tools Agreement") with Meta when it placed the Pixel on its website.

184.     The Facebook Business Tools Agreement is a valid and enforceable express contract between Defendant and Meta for the benefit of Defendant's customers. Under the Facebook Business Tools Agreement, Defendant gave Meta access to its patients' private information and in exchange Meta provided data analytic tools for use on Defendant's Website.

185.     In Connection with that Agreement, Defendant agreed to follow Meta's policies, which require businesses, like Cedars-Sinai, that use its Business Tools, including the Pixel, to represent that they have the legal rights to share the data, that they will not disclose medical data, and that they will give "robust" and "sufficiently prominent" notice that they would be sharing patients' Private Data, including medical data, with Meta for advertising purposes.

186.     The above policies are part of Meta's contract with Cedars-Sinai. Class members are the intended third party beneficiaries of this contract.

187.     While Plaintiff and the Class are not parties to the Facebook Business Tools Agreement, given the purpose of and the services to be provided under the Facebook Business Tools Agreement, and the surrounding circumstances, including Defendant's and Meta's public statements about their duties to protect Private Information, Plaintiff and the Class are intended third party beneficiaries of the Facebook Business Tools Agreement.

188.     The benefits that Plaintiff and the Class were to receive as intended third party beneficiaries of the Facebook Business Tools Agreement were not incidental to that Agreement.

189.     As a direct and proximate result of Defendant's breaches of the Facebook Business Tools Agreement, Plaintiff and the Class, as intended third party beneficiaries of Facebook Business Tools Agreement, sustained actual losses and damages as described in detail above in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
#### Breach of Implied Covenant of Good Faith and Fair Dealing

190.     Plaintiff incorporates the foregoing allegations as if fully set forth here.

191.     There is a covenant of good faith and fair dealing implied in every implied contract. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. To fulfill its covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

192.     Under the implied covenant of good faith and fair dealing, Defendant is obligated to, at a minimum: (a) implement proper procedures to safeguard the PHI and PII of Plaintiff and other Class members; (b) refrain from disclosing, without authorization or consent, the PHI and PII of Plaintiff and other Class members to any third parties; and (c) and promptly and accurately notify Plaintiff and other Class members of any unauthorized disclosure of, access to, and use of their Private Information.

193.     Defendant breached the implied covenant of good faith and fair dealing by, among other things:

- disclosing Plaintiff's and other Class members' Private Information to unauthorized outside entities, including Facebook and Google;

- allowing outside entities to access the Private Information of Plaintiff and other Class members;

- failing to implement and maintain adequate security measures to safeguard users' Private Information; and

- failing to timely notify Plaintiff and other Class members of the unlawful disclosure of their Private Information;

194.     As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have suffered actual losses and damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Negligence

195.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

196.     Defendant offered its Website to Plaintiff and Class members with full knowledge of the purposes for which the Website was being used, as well as the highly sensitive nature of the information the Website involved.

197.     Defendant owed a duty to Plaintiff and Class members arising from the sensitivity of Plaintiff's and Class members' information, and the privacy rights the Website was supposed to secure and protect, to exercise reasonable care in safeguarding such information and privacy rights. Defendant's duties included refraining from sharing patients' sensitive PII and PHI with unauthorized parties without users' informed and clear consent.

198.     Defendant breached its duties by, among other things, knowingly placing code on its Website that would divert customers' Private Information to outside entities including Meta for analytics and marketing purposes without adequate disclosure to and consent from its customers.

199.     Defendant's misconduct is inconsistent with industry regulations and standards.

200.     But for Defendant's breaches of its duties, Plaintiff's and Class members' PII and PHI would have been protected from unauthorized access and would not have been compromised or obtained by third parties without consent.

201.     Plaintiff and Class members were foreseeable victims of Defendant's wrongful conduct complained of herein. Defendant knew or should have known that its enabling of third-party access to customers' Private Information would cause damages to Plaintiff and Class members.

202.     As a result of Defendant's negligent and/or willful failures, Plaintiff and Class members suffered injury, including unauthorized release of Private Information to third parties,

and exposure to a heightened, imminent risk of unauthorized access to their private and personal data.

203.   The damages to Plaintiff and Class members were a proximate, reasonably foreseeable result of Defendant's breaches of its duties.

204.   Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Violation of California's Confidentiality of Medical Information Act**
**(Cal. Civ. Code § 56, *et seq.*)**

205.   Plaintiff incorporates the foregoing allegations as if set forth fully herein.

206.   The short title of the California Confidentiality of Medical Information Act, California Civil Code § 56, *et seq.* (hereinafter referred to as the "CMIA") states:

> The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information."

207.   The CMIA provides, at Section 56.10(a), that "a provider or health care … shall not disclose medical information regarding a patient … without first obtaining an authorization."

208.   Moreover, at all times relevant, Defendant was and is a "provider of health care" within the meaning of Civil Code § 56.05(m).

209.   Plaintiff and Class members are patients within the meaning of Civil Code § 56.05(k).

210.   At all relevant times, Defendant obtained medical information from its patients through its Website.

211.   The statute defines "medical information" as:

> [A]ny individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment. "Individually identifiable" means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the

- 41 -

patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.

Cal. Civ. Code § 56.05(i).

212.    Here, tracking code made possible the linking of a Website user and their identity. The information exchanged, including the contents of searches and the act and substance of making appointments with doctors, reveals information about patients' "physical condition or history."

213.    As a provider of health care, a contractor, and/or other authorized recipient of medical information as defined by Civil Code § 56.05(j), Defendant is required by the CMIA to ensure that medical information regarding patients is not disclosed, disseminated or released without patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.10, 56.13, 56.245, 56.26, 56.101 and 56.36.

214.    As provider of health care, a contractor, and/or other authorized recipient of medical information as defined by Civil Code § 56.05(j), Defendant is required by the CMIA not to disclose medical information regarding a patient without first obtaining an authorization[51] under Civil Code §§ 56.10, 56.13, 56.245 and 56.26.

---

[51]    An "authorization" is defined under the CMIA as obtaining permission in accordance with Civil Code § 56.11. Under Civil Code § 56.11, an authorization for the release of medical information is valid only if it:

(a)    Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

(b)    Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

(c)    Is signed and dated by one of the following:

(1)    The patient. A patient who is a minor may only sign an authorization for the release of medical information obtained by a provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which the minor could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

(2)    The legal representative of the patient, if the patient is a minor or an incompetent. However, authorization may not be given under this subdivision for the disclosure of medical information obtained by the provider of health care,

(continued…)

215. As a provider of health care, a contractor, and/or other authorized recipient of personal and confidential medical information, Defendant is required by the CMIA to create, maintain, preserve, and store medical records in a manner that preserves the confidentiality of the information contained therein under Civil Code § 56.101(a).

216. At all relevant times, as a provider of healthcare a contractor, and/or other authorized recipient of personal and confidential medical information within the meaning of the CMIA, Defendant maintains medical information as defined by Civil Code § 56.05(j) of the Plaintiff and Class members.

217. Plaintiff and Class members provided their medical information as defined by Civil Code § 56.05(j) to Defendant or their medical information as defined by Civil Code § 56.05(j) was provided to Defendant by other providers of health care, contractors, and/or other authorized recipients.

---

(…continued)

      health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which a minor patient could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

      (3) The spouse of the patient or the person financially responsible for the patient, where the medical information is being sought for the sole purpose of processing an application for health insurance or for enrollment in a nonprofit hospital plan, a health care service plan, or an employee benefit plan, and where the patient is to be an enrolled spouse or dependent under the policy or plan.

      (4) The beneficiary or personal representative of a deceased patient.

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

CLASS ACTION COMPLAINT

218.    Section 56.10(a) of the Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

219.    As a result of the tracking code on its Website, Defendant has released, disclosed, and/or negligently allowed third parties to access and view Plaintiff's and Class members' medical information without their written authorization as required by the provisions of Civil Code § 56, *et seq.*

220.    As a further result of the Defendant's actions, the confidential nature of the Plaintiff's and Class members' medical information was breached due to Defendant's negligence or affirmative decisions.

221.    Defendant's release and/or disclosure of medical information regarding Plaintiff and the Class members constitutes a violation of Civil Code §§ 56.06, 56.10, 56.11, 56.13, 56.26, 56.36, 56.101 and 56.245.

222.    By disclosing Plaintiff's and the Class members' medical information without their written authorization, Defendant violated the CMIA and its legal duty to protect the confidentiality of such information.

223.    Defendant also violated § 56.101(a) of the CMIA, which prohibits the negligent release of Plaintiff's and the Class members' medical information.

224.    As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class members' medical information as defined by Civil Code § 56.05(j) was viewed by, released to, and disclosed to third parties without Plaintiff's and Class members' written authorization and Plaintiff and the Class are entitled to recover, "against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it shall not be necessary that the

plaintiff suffered or was threatened with actual damages. (2) The amount of actual damages, if any, sustained by the patient."

225.    As a direct and proximate result of Defendant's above–described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CMIA, Plaintiff and the Class members are entitled to and hereby seek: (i) actual damages suffered, according to proof, for each violation under Civil Code § 56.36(b)(2); (ii) nominal damages of $1,000 for each violation under Civil Code § 56.36(b)(1); (iii) punitive damages under Civil Code § 56.35; and (iv) attorneys' fees, litigation expenses, and court costs under Civil Code § 56.35.

**NINTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

226.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

227.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

228.    Defendant engaged in unfair, fraudulent, and unlawful business practices in connection with its provision of Plaintiff's and other Class members' PHI and PII to unrelated third parties, including Meta, in violation of the UCL.

229.    As alleged herein, Defendant expressly represented to consumers such as Plaintiff and Class members, among other things: that information they entered onto Defendant's website would not be used for purposes other than those specifically requested by Plaintiff, such as finding a doctor within Defendant's system or the researching, on Defendant's system, of patients' medical conditions. Defendant also omitted or concealed the material fact of that it had installed internet eavesdropping devices, including the Meta Pixel, on its webpages. It thus failed to disclose to Plaintiff and Class members that it failed to meet legal and industry standards for the protection of PHI and PII and consequently, its customers' private property and information.

230.     The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

231.     Defendant violated the "unlawful" prong of the UCL by violating, *inter alia*, Plaintiff's and Class members' constitutional rights to privacy, state and federal privacy statutes, and state consumer protection statutes, such as The Children's Online Privacy Protection Act, 16 C.F.R. § 312.5 ("COPPA"), The Online Privacy Protection Act, California Business and Professions Code §§ 22575-22579 ("CalOPPA"), the California Invasion of Privacy Act ("CIPA"), California Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA"), and The Health Insurance Portability and Accountability Act ("HIPAA").

232.     Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct, as alleged herein, offended public policy (including the aforementioned federal privacy statutes, and state consumer protection statutes, such as COPPA, CalOPPA, CIPA, CDAFA, and HIPAA) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members.

233.     The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests other than Defendant's conduct described herein.

234.     By exposing, compromising, and willfully sharing and/or selling Plaintiff's and Class members' private property and personal information without authorization, Defendant engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

235.     A reasonable person would not have agreed interact with Defendant's website had he or she known the truth about Defendant's practices alleged herein. By withholding material information about its practices, Defendant was able to convince customers to use its website and to entrust their highly personal information to Defendant.

236.     As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief.

237.     As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, including but not limited to payments to Defendant and/or other valuable consideration, *e.g.*, access to their private and personal data. The unauthorized access to Plaintiff's and Class members' private and personal data also has diminished the value of that information.

238.     In the alternative to those claims seeking remedies at law, Plaintiff and Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful, unfair, and fraudulent practices. Further, no legal remedy exists under COPPA, CalOPPA, and HIPAA. Therefore, Plaintiff and members of the proposed Class are entitled to equitable relief to restore Plaintiff and Class members to the position they would have been in had Defendant not engaged in unfair competition, including an order enjoining Defendant's wrongful conduct, restitution, and disgorgement of all profits paid to Defendant as a result of its unlawful and unfair practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests that this Court:

A.     Certify the Class as a class action pursuant to Code of Civil Procedure Section 382, designating Plaintiff as the Class Representative and naming the undersigned as Class Counsel;

B.     Award compensatory damages, including all applicable statutory damages, for damages caused by Defendant's wrongdoing;

C.     Award punitive damages for the purpose of deterring Defendant from committing similar wrongdoing in the future.

D.     Permanently enjoin the Defendant from further sharing communications made on its Website with third parties without the Website's users' knowledge and consent;

E.     Award pre-judgment interest to Plaintiff and Class members to the fullest extent allowed by law;

CLASS ACTION COMPLAINT

F.    Award Plaintiff and the members of the Class the costs of bringing this action, including the payment of reasonable attorneys' fees and administrative and litigation costs and expenses; and

G.    Grant such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 29, 2022          Respectfully submitted,

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:    *Rachele R. Byrd*
            RACHELE R. BYRD

RACHELE R. BYRD
FERDEZA ZEKIRI
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  (619) 239-4559
Facsimile:   (619) 234-4599
byrd@whafh.com
zekiri@whafh.com

*Attorneys for Plaintiff*

29015v5

- 48 -
CLASS ACTION COMPLAINT

Electronically FILED by Superior Court of California, County of Los Angeles on 12/30/2022 03:38 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Drew,Deputy Clerk

22STCV41085 *Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Daniel Crowley*

Page 52 of 100 - Page ID #:66

**CIVIL CASE COVER SHEET**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Rachele R. Byrd (190634)
Wolf Haldenstein Adler et al., 750 B Street, Suite 1820, San Diego, CA 92101

TELEPHONE NO.: 619/239-4599   FAX NO. *(Optional):* 619/234-4599
E-MAIL ADDRESS: byrd@whafh.com
ATTORNEY FOR *(Name):* John Doe

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

CASE NAME:
Doe v. Cedars-Sinai Health System, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) / [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 22STCV41085 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 9: Invasion of Privacy, Breach of Contract/Good Faith, Negligence, Confidentiality, Unfair Competition
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/29/2022

Rachele R. Byrd
(TYPE OR PRINT NAME)

▶ *Rachele R. Byrd*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Doe v. Cedars-Sinai Health System | |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.    Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.    Location where petitioner resides. |
| 2.    Permissive filing in Central District. | 8.    Location wherein defendant/respondent functions wholly. |
| 3.    Location where cause of action arose. | 9.    Location where one or more of the parties reside. |
| 4.    Location where bodily injury, death or damage occurred. | 10.    Location of Labor Commissioner Office. |
| 5.    Location where performance required, or defendant resides. | 11.    Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.    Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| Doe v. Cedars-Sinai Health System | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Doe v. Cedars-Sinai Health System | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>                         Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| | | |
|---|---|---|
| LASC CIV 109 Rev. 11/22 | **CIVIL CASE COVER SHEET ADDENDUM** | LASC Local Rule 2.3 |
| For Mandatory Use | **AND STATEMENT OF LOCATION** | |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Doe v. Cedars-Sinai Health System | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2003 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE Doe v. Cedars-Sinai Health System | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: |
|---|---|
| CITY:                STATE:        ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _12/30/2022_____

*Rachele R. Byrd*
_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (10/22).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/30/2022<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ S. Drew _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>22STCV41085 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Maren  Nelson | 17 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 12/30/2022
　　(Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By S. Drew , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

### NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) | FIRST AMENDED GENERAL ORDER |
| — MANDATORY ELECTRONIC FILING ) | |
| FOR CIVIL ) | |
| ) | |
| ) | |
| _____ ) | |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

    a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

    b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

    c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

    d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4).  Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked.  Examples include, but are not limited to, the following:

   i)   Depositions;

   ii)   Declarations;

   iii)   Exhibits (including exhibits to declarations);

   iv)   Transcripts (including excerpts within transcripts);

   v)   Points and Authorities;

   vi)   Citations; and

   vii)   Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

---

4

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing.  Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

7

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

**What is ADR?**

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

**Advantages of ADR**
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

**Disadvantages of ADR**
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

**Main Types of ADR**

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

   a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9000
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

   b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

   c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                           FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the  cross-
         (INSERT DATE)                                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR PLAINTIFF)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)
Date:

_____                ➤ _____
        (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| Print | | Save | | Clear |
|---|---|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

       iii.    Be filed within two (2) court days of receipt of the Request; and

       iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                        (ATTORNEY FOR _____)

| Print | Save |     | Clear |

LACIV 036 (new)
LASC Approved 04/11                    **STIPULATION – DISCOVERY RESOLUTION**
For Optional Use                                                                                          Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

### INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date:  _____

_____
JUDICIAL OFFICER

| Print | Save | | Clear |
|---|---|---|---|

1

2

3

4

5

6

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

7

8

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

9

10

11

12

13

General Order Re
Use of Voluntary Efficient Litigation
Stipulations

      )
      )
      )
      )
      )
      )

ORDER PURSUANT TO CCP 1054(a),
EXTENDING TIME TO RESPOND BY
30 DAYS WHEN PARTIES AGREE
TO EARLY ORGANIZATIONAL
MEETING STIPULATION

14

15

16

17

18

      Whereas the Los Angeles Superior Court and the Executive Committee of the
Litigation Section of the Los Angeles County Bar Association have cooperated in
drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for
use in general jurisdiction civil litigation in Los Angeles County;

19

20

21

22

23

24

25

26

27

28

      Whereas the Los Angeles County Bar Association Litigation Section; the Los
Angeles County Bar Association Labor and Employment Law Section; the Consumer
Attorneys Association of Los Angeles; the Association of Southern California Defense
Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California
Employment Lawyers Association all "endorse the goal of promoting efficiency in
litigation, and ask that counsel consider using these stipulations as a voluntary way to
promote communications and procedures among counsel and with the court to fairly
resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court

order.

DATED: _May 11, 2011_                  _Carolyn B. Kuhl_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012<br><br>PLAINTIFF/PETITIONER:<br>John Doe<br><br>DEFENDANT/RESPONDENT:<br>Cedars-Sinai Health System, et al. | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/13/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ M. Mata _____ Deputy |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22STCV41085 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order re: Complex Designation) of 01/13/2023, Initial Status Conference Order  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Rachele R. Byrd
WOLF GALDENSTEIN ADLER FREEMAN & HERZ, LLP.
750 B Street
Suite 1820
San Diego, CA 92101



David W. Slayton, Executive Officer / Clerk of Court

Dated: <u>01/13/2023</u>          By: <u>M. Mata</u>
                                                        Deputy Clerk


**CERTIFICATE OF MAILING**

**FILED**
Superior Court of California
County of Los Angeles

01/13/2023

David W. Slayton, Executive Officer / Clerk of Court

By: _____ M. Mata _____ Deputy

1

2

3

4

5

6

7

8

9

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10

COUNTY OF LOS ANGELES

11

12

| | |
|---|---|
| JOHN DOE | Case No.: 22STCV41085 |
| Plaintiff, | INITIAL STATUS CONFERENCE ORDER (COMPLEX CLASS ACTIONS) |
| vs. | |
| CEDARS-SINAI HEALTH SYSTEM | |
| Defendant | Dept. 17 Spring Street Courthouse Hon. Maren E. Nelson |

13

14

15

16

17

18

19

20

21       This Initial Status Conference Order (Complex Class Actions) supplements a

22  Minute Order served concurrently herewith.  That Minute Order sets a date and time for

23  the Initial Status Conference and includes other provisions which not repeated in this

24  Order.  Counsel should review that Minute Order carefully to be fully informed of your

25

obligations and the processes used in the Los Angeles Superior Court Complex Courtrooms.

Pending further order, the following is ordered:

**I.    Initial Status Conference**

Counsel for all parties shall appear for an Initial Status Conference ("ISC") per the Minute Order served concurrently herewith.

Counsel representing a party at the ISC or any other status conference should be fully familiar with the facts as then understood and be able to make binding agreements respecting case management.

Parties presently engaged in mediation or who have a secured a date with a mediator for mediation may stipulate to one continuance of the ISC, provided they also agree upon an e-service provider, as set forth in Item 8, below, and include the name of the provider and the date of the mediation in their Stipulation for Continuance.  It is expected that parties using this procedure will timely exchange such information as is necessary to have a productive mediation and that the mediation will go forward as scheduled.

At the ISC, the Court will discuss case management, set dates for motions, and invite the parties to propose procedures to enhance efficiency and avoid duplicative or unnecessary expenditures of time.

At least ten (10) days prior to the ISC, all counsel shall meet, preferably by use of telephone and/or video technology, to discuss case management.  Plaintiff's counsel shall take the lead in preparing a joint ISC Statement and ensuring that it is filed at least **five** (5) court days prior to the ISC.   To the extent the parties are unable to agree on a joint submission, each party may separately present a brief statement of its position.  If any party who has been served with this Order declines to participate, all other parties shall file an ISC statement.

The ISC Statement shall contain the following in the following order:

ISC ORDER  -  2

1. A succinct description of the facts of the case as then known. In wage and hour cases the nature of the employee's work, the employer's business, and the specific factual bases for claims under the Labor Code shall be provided. Citations to relevant statutes and pending appellate cases that may impact the case shall be provided.

2. A discussion of any issues of jurisdiction, venue, contractual arbitration/judicial reference that any party intends to raise and the meet and confer efforts to date on these issues. Prior to the ISC any party seeking arbitration shall have provided a copy of the applicable agreement to arbitrate to the opposing party and a decision should have been made as to whether a motion to compel arbitration will be required. Dates for any motions involving challenges to jurisdiction, venue, the pleadings, or referrals to arbitration will be set at the ISC.

3. Counsel should address issues such as an agreement to share the cost of class notice/opt out procedures, the adequacy of class representatives, and potential conflicts of interest among class representatives.

4. Whether the action incorrectly identifies the name of any party and whether any party intends to add parties or causes of action by way of amendment, cross-complaint, or the like.

5. The names, addresses, telephone, email, and facsimile numbers of all counsel and the parties they represent.

6. Any basis for the Court's recusal or disqualification.

7. A discussion of the identity of entities or persons other than those shown in the pleadings that may have a significant financial or other interest in the proceedings.

8. A joint recommendation for an e-service provider for inclusion in the Court's order for initiation of e-service. The parties must employ an agreed e-service provider. The parties shall identify the appointed e-service provider in the caption of each filing.

9. A brief description of any related cases pending in other courts or anticipated for future filing.

10. Whether there is insurance coverage for the dispute.

11. A plan to preserve evidence, to deploy a uniform system for identification of documents, and to protect confidentiality by, for example, executing a protective order.

12. A preliminary discovery plan, with dates, reflecting the parties' consideration of phased discovery, e.g., limiting initial discovery to a significant or dispositive issue as a predicate to an important early ruling or meaningful participation in an early mediation.   In class actions, the parties should address whether discovery should initially be limited to class certification issues.

13. Where appropriate, the parties should outline a process for managing discovery of electronically stored information (ESI) by, for example, scheduling a meeting among counsel and the parties' information technology consultants in order to address (1) the information management systems employed by the parties; (2) the location and custodian(s) of information likely to be subject to production (including the identification of network and email servers and hard drives maintained by target custodians); (3) the format in which electronically stored information will be produced; (4) the type of ESI that will be produced, i.e., data files, emails, etc.; and (5) appropriate search criteria for focused requests.

14. Any proposed mechanism for and the timing of mediation and/or mandatory settlement conferences to assist in resolution of the case.

15. Any issues regarding publicity which the Court should consider.

16. Recommended dates and times for trial, filing of motions for class certification, alternative dispute resolution, and deadlines (and proposed briefing schedules) for filing other anticipated motions.

17. A recommended date for the next Status Conference.

## III.    **Reminders And Other Information**

1. It is the joint responsibility of counsel to file a joint status conference statement for all status conferences scheduled after the ISC, which statement shall be filed five

(5) court days in advance of the status conference.

2. Counsel may secure dates for motions by calling the Courtroom Assistant. Counsel should have jointly discussed any likely contested motion with each other and the Court before it is filed so that, if possible, the matter may be resolved or narrowed by agreement or, if filed, an appropriate briefing schedule is set.

3. Unless otherwise ordered, counsel may appear remotely for all appearances. Please be in a quiet place and note that a party speaking may not hear simultaneous speech in the courtroom. Please speak slowly and pause frequently. Each counsel should advise the others at least 24 hours in advance as to whether an appearance will be remote or in person.

4. Any message on the message board for the Court should be joint and neutral in tone. Absent good cause shown no unilateral postings are appropriate.

5. In the ordinary course, discovery motions will not be heard without an Informal Discovery Conference (IDC) pursuant to Cal. Code of Civ. Pro. § 2016.080. Counsel may arrange for an IDC by jointly posting a request on the e-service provider's message board. If all counsel are not in agreement, counsel may request an IDC by filing LACIV094. Unilateral requests for IDC by message board are not appropriate.

6. Specific direction as to the matters to be provided to the Court for the IDC and the timing of same will be given at the time the IDC is arranged and may vary depending on the nature of the dispute. Unless otherwise ordered, IDC are held by LACourtConnect and off the record.

7. It is the responsibility of all counsel to notify the Court promptly of any related case and to secure a ruling thereon. See Cal. Rules of Court, Rule 3.300 et. seq. This responsibility is on-going.

8. Posting documents to the e-service provider does not constitute filing a document. See the Minute Order for further terms re efiling.

9. Counsel desiring a protective order should consult the model on the court's website and provide a redlined copy if deviations are made from same. See

"Helpful Guidance From the Complex Litigation Judges" on the Complex Litigation webpage link provided in the Minute Order.

10. Any future stay ordered by the Court for purposes of case management is not a stay under Code of Civil Procedure § 583.310 unless the Court so orders

11. The dismissal of a class action requires court approval. Cal. Rules of Court, Rule 3.770(a). Counsel must submit a declaration setting forth, among other things, the reasons why a party seeks a dismissal in a class action and any and all consideration given in exchange for the dismissal.

12. Settlement of claims filed under the Private Attorney General Act (PAGA) (whether or not filed as part of a class action) require notice to the Labor and Workforce Development Agency. Labor Code § 2699 (l)(2). A noticed hearing, with proof of service to LWDA and a proposed Order, is required to secure approval of the settlement of a PAGA claim. Settlements that include dismissal of a PAGA claim require that the Court be advised of the specific terms of any release of the PAGA claim and the consideration, if any, for same.

To obtain approval of a class action settlement, the parties should strictly adhere to the Guidelines for Motions for Preliminary and Final Approval posted on the court's website under Tools for Litigators. See the link to same in the Minute Order served concurrently herewith.

**IV.   Notice of the ISC Order**

Plaintiff's counsel shall serve this Initial Status Conference Order on all defense counsel, or if counsel is not known, on each defendant and file a Proof of Service with the court within seven (7) days of the date of this Order. If the Complaint has not been served as of the date of this Order, plaintiff(s) must serve the Complaint, along with a copy of this Order, within five (5) days of the date of this Order.

Once served, each as yet non-appearing defendant shall file a Notice of Appearance (identifying counsel by name, firm name, address, email address, telephone number and fax number). The filing of a Notice of Appearance is without prejudice to

///

ISC ORDER - 6

///

(a) any jurisdictional, substantive, or procedural challenge to the Complaint, (b) any
affirmative defense, and (c) the filing of any cross-complaint in this action.

Date: 1/13/2023



Maren E. Nelson
Judge of the Superior Court
Maren Nelson / Judge

ISC ORDER  - 7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 17

**22STCV41085**                                                    January 13, 2023
**JOHN DOE vs CEDARS-SINAI HEALTH SYSTEM, et al.**                   1:53 PM

Judge: Honorable Maren Nelson              CSR: None
Judicial Assistant: Maribel Mata           ERM: None
Courtroom Assistant: None                  Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: Complex Designation

By this order, the Court determines this case to be Complex according to Rule 3.400 of the California Rules of Court. The Clerk's Office has assigned this case to this department for all purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The stay continues at least until the Initial Status Conference. Initial Status Conference is set for 04/04/2023 at 09:00 AM in this department. At least ten (10) days prior to the Initial Status Conference, counsel for all parties must discuss the issues set forth in the Initial Status Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the Court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a waiver of any substantive or procedural challenge to the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Spring Street Courthouse, Department 17

**22STCV41085**                                                    January 13, 2023
**JOHN DOE vs CEDARS-SINAI HEALTH SYSTEM, et al.**                    1:53 PM

Judge: Honorable Maren Nelson                CSR: None
Judicial Assistant: Maribel Mata             ERM: None
Courtroom Assistant: None                    Deputy Sheriff: None

---

Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for "Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's First Amended General Order of May 3, 2019, particularly including the provisions therein requiring Bookmarking with links to primary documents and citations; that Order is available on the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and parties to make audio or video appearances in Los Angeles County courtrooms. LACourtConnect technology provides a secure, safe and convenient way to attend hearings remotely. A key element of the Court's Access LACourt YOUR WAY program to provide services and access to justice, LACourtConnect is intended to enhance social distancing and change the traditional in-person courtroom appearance model. See https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**22STCV41085**                                                      January 13, 2023
**JOHN DOE vs CEDARS-SINAI HEALTH SYSTEM, et al.**                    1:53 PM

Judge: Honorable Maren Nelson              CSR: None
Judicial Assistant: Maribel Mata           ERM: None
Courtroom Assistant: None                  Deputy Sheriff: None

Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Mailing is attached.

Electronically FILED by Superior Court of California, County of Los Angeles on 01/13/2023 01:41 PM David W. Slayton, Executive Officer/Clerk of Court, by R. Lazono, Deputy Clerk

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>RACHELE R. BYRD, ESQ. (SBN 190634)<br>Wolf Haldenstein Adler Freeman & Herz LLP<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br> *Telephone No:* (619) 239-4599<br><br> *Attorney For:* Plaintiff | *For Court Use Only* |

| | |
|---|---|
| *Ref. No. or File No.:*<br>CEDARS 83552.001 | |

*Insert name of Court, and Judicial District and Branch Court:*
SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF LOS ANGELES

*Plaintiff:* JOHN DOE, on behalf of himself and all others similarly situated
*Defendant:* CEDARS-SINAI HEALTH SYSTEM, et al.

| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>22STCV41085 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; First Amended General Order; Notice of Case Assignment-Unlimited Civil Case; Voluntary Efficient Litigation Stipulations; Stipulation-Discovery Resolution; Stipulation-Early Organizational Meeting; Informal Discovery Conference; Stipulation And Order-Motions In Limine; Alternative Dispute Resolution (ADR) Information Package

3. *a. Party served:* CEDARS-SINAI HEALTH SYSTEM
   *b. Person served:* Jessie Gastelum, Intake Specialist, CT Corporation System, Registered Agent

4. *Address where the party was served:* 330 N Brand Blvd Suite 700 , Glendale, CA 91203

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Fri, Jan 06 2023 (2) at *(time)*: 12:40 PM

   (1) [X] (business)
   (2) [ ] (home)
   (3) [ ] (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: CEDARS-SINAI HEALTH SYSTEM
      under the following Code of Civil Procedure section:

   | [X] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
   |---|---|
   | [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
   | [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
   | [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
   | [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
   | [ ] other: | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*8185130*
*(15071207 )*
Page 1 of 2

| Attorney or Party without Attorney:<br>RACHELE R. BYRD, ESQ. (SBN 190634)<br>Wolf Haldenstein Adler Freeman & Herz LLP<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br> Telephone No:   (619) 239-4599<br><br> Attorney For:   Plaintiff | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.:<br>CEDARS 83552.001 | |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF LOS ANGELES | | |
| Plaintiff:   JOHN DOE, on behalf of himself and all others similarly situated<br>Defendant:   CEDARS-SINAI HEALTH SYSTEM, et al. | | |

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>22STCV41085 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7.   **Person who served papers**
    a.   Name:   Douglas Forrest
    b.   Address:   **c/o FIRST LEGAL**
                       530 B Street, Suite 1050
                       SAN DIEGO, CA 92101
    c.   Telephone number:   (619) 231-9111
    d.   **The fee** for service was:   $110.80
    e.   I am:
       (1)   ☐   not a registered California Process Server.
       (2)   ☐   exempt from registration under Business and Professions Code section 22350(b).
       (3)   ☒   a registered California process server:
           (i)   ☐ owner   ☐ employee   ☒ independent contractor
           (ii)   Registration No:   5141
           (iii)   County:   Los Angeles

8.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

               01/09/2023
                 *(Date)*                           *Douglas Forrest*



Electronically FILED by Superior Court of California, County of Los Angeles on 01/19/2023 04:43 PM David W. Slayton, Executive Officer/Clerk of Court, by L. Smith,Deputy Clerk

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| RACHELE R. BYRD (190634)<br>WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP<br>750 B Street, Suite 1820<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 239-4559    FAX NO. *(Optional)*: (619) 234-4599<br>E-MAIL ADDRESS *(Optional)*: byrd@whafh.com<br>ATTORNEY FOR *(Name)*: Plaintiff JOHN DOE | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street

| PLAINTIFF/PETITIONER: JOHN DOE | CASE NUMBER:<br>22STCV41085 |
|---|---|
| DEFENDANT/RESPONDENT: CEDARS-SINAI HEALTH SYSTEM et al, | JUDICIAL OFFICER:<br>Hon. Maren Nelson |
| **NOTICE OF RELATED CASE** | DEPT.:<br>017 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: BROWNE v. CEDARS-SINAI HEALTH SYSTEM and CEDARS-SINAI MEDICAL CENTER

   b. Case number: 23STCV00469

   c. Court:  ☑ same as above

     ☐ other state or federal court *(name and address)*:

   d. Department: 017

   e. Case type:  ☐ limited civil  ☑ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify)*: Class Action

   f. Filing date: 01/10/2023

   g. Has this case been designated or determined as "complex?"  ☑ Yes  ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

     ☑ involves the same parties and is based on the same or similar claims.

     ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

     ☐ involves claims against, title to, possession of, or damages to the same property.

     ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

       ☐ Additional explanation is attached in attachment 1h

   i. Status of case:

     ☑ pending

     ☐ dismissed  ☐ with  ☐ without prejudice

     ☐ disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court:  ☐ same as above

     ☐ other state or federal court *(name and address)*:

   d. Department:

Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov

CM-015

| PLAINTIFF/PETITIONER: JOHN DOE | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CEDARS-SINAI HEALTH SYSTEM et al, | 22STCV41085 |

2. *(continued)*

  e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?"  ☐ Yes  ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

  ☐ involves the same parties and is based on the same or similar claims.

  ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

  ☐ involves claims against, title to, possession of, or damages to the same property.

  ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

  ☐ Additional explanation is attached in attachment 2h

  i. Status of case:

  ☐ pending

  ☐ dismissed  ☐ with  ☐ without prejudice

  ☐ disposed of by judgment

3. a. Title:

  b. Case number:

  c. Court: ☐ same as above

  ☐ other state or federal court *(name and address):*

  d. Department:

  e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?"  ☐ Yes  ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

  ☐ involves the same parties and is based on the same or similar claims.

  ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

  ☐ involves claims against, title to, possession of, or damages to the same property.

  ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

  ☐ Additional explanation is attached in attachment 3h

  i. Status of case:

  ☐ pending

  ☐ dismissed  ☐ with  ☐ without prejudice

  ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 01/19/2023

RACHELE R. BYRD
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ *Rachele R. Byrd*
_____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]  **NOTICE OF RELATED CASE**  Page 2 of 4

CM-015

| PLAINTIFF/PETITIONER: JOHN DOE | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CEDARS-SINAI HEALTH SYSTEM et al. | 22STCV41085 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   WOLF HALDENSTEIN ADLERFREEMAN & HERZ LLP
   750 B Street, Suite 1820, San Diego, CA 92101

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☑ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* 01/19/2023

   b. from *(city and state):* San Diego, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☑ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 01/19/2023

Elle Chaseton
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ *Elle Chaseton*
_____
(SIGNATURE OF DECLARANT)

**POS-030(P)**

| SHORT TITLE: DOE v. CEDARS-SINAI HEALTH SYSTEM et al. | CASE NUMBER:<br>22STCV41085 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| BURSOR & FISHER, P.A.<br>L. Timothy Fisher | 1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596 |
| BURSOR & FISHER, P.A.<br>Joshua D. Arisohn, Philip L. Fraietta | 888 Seventh Avenue<br>New York, NY 10019 |
| BURSOR & FISHER, P.A.<br>Christopher R. Reilly | 701 Brickell Ave., Suite 1420<br>Miami, FL 33131-2800 |
| DRURY LEGAL, LLC<br>Scott R. Drury | 6 Carriage Lane<br>Highwood, Illinois 60040 |
| CEDARS-SINAI MEDICAL CENTER<br>CT Corporation System | 330 N Brand Blvd., Suite 700<br>Glendale, CA 91203 |
| CEDARS-SINAI HEALTH SYSTEM<br>CT Corporation System | 330 N Brand Blvd., Suite 700<br>Glendale, CA 91203 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030(P) [New January 1, 2005] | **ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**<br>**(PERSONS SERVED)**<br>**(Proof of Service)** | Page 4 of 4 |
|---|---|---|

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Spring Street Courthouse
312 North Spring Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
John Doe

DEFENDANT/RESPONDENT:
Cedars-Sinai Health System, et al.

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

01/25/2023

David W. Slayton, Executive Officer / Clerk of Court

By: _____ M. Mata _____ Deputy

## CERTIFICATE OF MAILING

CASE NUMBER:
22STCV41085

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order re: Notice of Related Case) of 01/25/2023  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Rachele Renee Byrd
Wolf Haldenstein Adler Freeman & HerzLLP
750 B Street
Suite 1820
San Diego, CA 92101

David W. Slayton, Executive Officer / Clerk of Court

Dated: 01/25/2023

By:  M. Mata
     Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 17

**22STCV41085**                                                          January 25, 2023
**JOHN DOE vs CEDARS-SINAI HEALTH SYSTEM, et al.**                              3:17 PM

Judge: Honorable Maren Nelson                CSR: None
Judicial Assistant: Maribel Mata             ERM: None
Courtroom Assistant: None                    Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: Notice of Related Case

The Court finds that the following cases, 22STCV41085 and 23STCV00469, are related within the meaning of California Rules of Court, rule 3.300(a). 22STCV41085 is the lead case. For good cause shown, said cases are assigned to Judge Maren Nelson in Department 17 at Spring Street Courthouse for all purposes.

The Court is in receipt of a Notice of Related Case, seeking to relate Doe v Cedars Sinai 22STCV41085 and Browne v Cedars Sinai 23STCV00469. Having reviewed the Complaints in both actions it appears that the central allegations and legal theories overlap and that relation is proper pursuant to CRC 3.300 et seq.

An Initial Status Conference will be held in both cases on 04/04/2023 at 9:00 a.m. All other dates in both cases are vacated. All parties and counsel shall file in each case a single joint Initial Status Conference report 5 court days in advance. In addition to the topics addressed in the Court's previously served Initial Status Conference Orders the parties shall discuss:

(1) The need, if any, for a consolidated complaint;
(2) Coordination of discovery in both actions;
(3) A shared document repository
(4) Whether motion practice should be coordinated; and
(5) Any other matters which counsel for any party believe would be usefully considered so as to efficiently manage the litigation to the befit of all parties.

Counsel for plaintiff is to give notice.

Certificate of Mailing is attached.