RACHELE R. BYRD (190634)
FERDEZA ZEKIRI (335507)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4559
Facsimile: (619) 234-4599
byrd@whafh.com
zekiri@whafh.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEDARS-SINAI HEALTH SYSTEM and CEDARS-SINAI MEDICAL CENTER,<br><br>Defendants. | Case No. 2:23-cv-870-DSF (JPRx)<br><br>[Los Angeles County Superior Court Case No.: 22STCV41085]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:      April 24, 2023<br>TIME:       1:30 p.m.<br>ROOM:     7D<br>JUDGE:    Hon. Dale S. Fischer |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 24, 2023 at 1:30 p.m., or as soon thereafter as the parties may be heard, Plaintiff will and hereby does move this Court in courtroom 7D, located at First Street Courthouse, 350 West 1st Street, Los Angeles, California, for an Order remanding this matter back to state court.

This motion is based on the following documents: this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities; any oral arguments to be made at the hearing on this motion; and all other papers, documents, or exhibits on file or to be filed in this action.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 24, 2023.

DATED: March 3, 2023                **WOLF HALDENSTEIN ADLER**
                                    **FREEMAN & HERZ LLP**


                                    By:   */s/ Rachele R. Byrd*
                                          RACHELE R. BYRD

                                    RACHELE R. BYRD
                                    FERDEZA ZEKIRI
                                    750 B Street, Suite 1820
                                    San Diego, CA 92101
                                    Telephone:  (619) 239-4559
                                    Facsimile:  (619) 234-4599
                                    byrd@whafh.com
                                    zekiri@whafh.com

                                    *Attorneys for Plaintiff*

-1-

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS .............................................................................. 2

III.  ARGUMENT .................................................................................................. 3

    A.  Legal Standard ....................................................................................... 3

    B.  The Federal Officer Removal Statute Does Not Apply ............................. 4

        1.  Defendant Does Not Act Under a Federal Officer ................................. 6

        2.  There is No Causal Connection with Plaintiff's Claims ..................... 12

    C.  The Court Should Award Plaintiff His Attorneys' Fees and Costs ............ 13

IV.  CONCLUSION .............................................................................................. 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Burton v. Silverado Escondido, LLC,*
No.: 21-cv-1213-WQH-RBB,
2021 U.S. Dist LEXIS 211717, 2021 WL 5087259
(S.D. Cal. Nov. 2, 2021)...............................................................................8, 9

*Cnty. of San Mateo v. Chevron Corp.,*
32 F.4th 733 (9th Cir. 2022)..........................................................*passim*

*Cortez v. Parkwest Rehab. Ctr. LLC,*
No. CV 21-05172 AB (ASx),
2021 U.S. Dist. LEXIS 168019, 2021 WL 4033759
(C.D. Cal. Sep. 3, 2021) ...................................................................................9

*Gaus v. Miles, Inc.,*
980 F.2d 564 (9th Cir. 1992)………………………………………............... 4

*Khorsandi v. Silverado Senior Living, Inc.,*
No. LA CV 21-01503 JAK (JPRx),
2021 U.S. Dist. LEXIS 174665, 2021 WL 4168192
(C.D. Cal. Sep. 14, 2021)………………………………………………….8, 9, 10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994)………………………………………………............3

*Lake v. Ohana Mil. Cmtys., LLC,*
14 F.4th 993 (9th Cir. 2021)....................................................................*passim*

*Lawler v. Cedar Operations, LLC,*
No. EDCV 21-01017-CJC(SHKx),
2021 U.S. Dist. LEXIS 194306, 2021 WL 4622414
(C.D. Cal. Oct. 7, 2021) ...................................................................................9

*Moss v. Infinity Ins. Co.,*
197 F. Supp. 3d 1191 (N.D. Cal. 2016) .............................................................6

*Panther Brands, LLC v. Indy Racing League, LLC*,
   827 F.3d 586 (7th Cir. 2016)...............................................................................7

*Quinto v. Regents of the Univ. of Cal.*,
   No. 3:22-cv-04429-JD,
   2023 U.S. Dist. LEXIS 17263, 2023 WL 1448050
   (N.D. Cal. Feb. 1, 2023) ………………………………………….. 10, 11

*Riggs v. Airbus Helicopters, Inc.*,
   939 F.3d 981 (9th Cir. 2019).............................................................................3

*Romeo v. Canoga Healthcare, Inc.*,
   No. CV 21-02918-AB (RAOx),
   2021 U.S. Dist. LEXIS 147172, 2021 WL 3418730
   (C.D. Cal. Aug. 5, 2021) ...............................................................................6, 7

*Silver Peaks, LLC v. Caremore Health Plan*,
   No. 2:21-cv-04608-FLA (PDx),
   2021 U.S. Dist. LEXIS 14267, 2021 WL 3269977
   (C.D. Cal. July 29, 2021) ......................................................................3, 4, 5, 7

*Vaccarino v. Aetna, Inc.*,
   No. EDCV 18-02349 JGB (SHKx),
   2018 U.S. Dist. LEXIS 202672, 2018 WL 6249707
   (C.D. Cal. Nov. 29, 2018) ...............................................................................5

*Watson v. Philip Morris Cos.*,
   551 U.S. 142 (2007) .........................................................................................4

*Westbrook v. San Pablo Healthcare & Wellness Ctr.*,
   No. 21-cv-06474-JD,
   U.S. Dist. LEXIS 103427, 2022 WL 2072933
   (N.D. Cal. June 9, 2022) ...............................................................................12

**Statutes**

28 U.S.C.
   § 1441(a)…………………………………………………… …..4
   §1442(a)(1) ................................................................................ *passim*
   §1447(c)…. ……………………………………………………4, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff John Doe ("Plaintiff") filed this action on behalf of himself and all others similarly situated against Defendants Cedars-Sinai Health System and Cedars-Sinai Medical Center (collectively, "Cedars-Sinai" or "Defendant") for sharing, without his or other class members' knowledge or consent, their sensitive and protected health and personally identifiable information with unrelated companies, including Facebook/Meta, Google, Microsoft Bing, and other marketing and social media platforms and businesses. Defendant placed tracking code on its website that diverted customers' private information to outside entities for analytics and marketing purposes without adequate disclosure to and consent from its customers. Plaintiff alleges Defendant's conduct violates state statutory and common law, including, most notably, the California Invasion of Privacy Act (Cal. Penal Code §§ 630, 631, 632 *et seq.*) and the California Constitution, Art. 1, § 1.

On February 3, 2023, Defendant improperly removed this action pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Under controlling Ninth Circuit precedent, this action must be remanded because Defendant has not met its burden of establishing that its unlawful actions were taken pursuant to a federal officer's directions or the required causal nexus between any federal officer's directions and Plaintiff's claims. *See Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022); *see also Lake v. Ohana Mil. Cmtys., LLC,* 14 F.4th 993 (9th Cir. 2021). Defendant was not ordered by the government to place the tracking code on its website. In fact, the government has made clear that "***[r]egulated entities . . . are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors***." ¶ 102[1] (emphasis added) (quoting HHS.gov, *Use of Online Tracking Technologies by*

---

[1] All paragraph references ("¶"), unless otherwise indicated, are to Plaintiff's Class Action Complaint ("Complaint"), ECF No. 1, Exhibit A.

*HIPAA Covered Entities and Business Associates*, Dec. 1, 2022).[2]

Defendant's removal of this action to this Court was without basis, and the Court should remand it to State Court and award Plaintiff his attorneys' fees in bringing this motion.

## II.    STATEMENT OF FACTS

Defendant Cedars-Sinai is a major healthcare organization based in Los Angles, California. ¶ 1. It maintains a website and a mobile application or "app" (together, the "Website") through which it communicates with its more than one million patients. *Id*. It encourages patients to use this Website to research their medical symptoms and health issues, identify doctors who can treat their specific conditions, make appointments with those doctors, and take other actions related to their personal health care. *Id*. When doing this, patients convey highly private information, including medical information, through the Website. *Id*. Plaintiff and the other members of the class communicated with Defendant through its Website and shared information, including Protected Health Information ("PHI") and Personally Identifiable Information ("PII") with the reasonable belief that Defendant would take appropriate steps to maintain the privacy of these communications. ¶ 2. Instead, unbeknownst to Plaintiff and Defendant's other patients and contrary to their reasonable expectations of privacy, Defendant embedded tracking code in its Website that caused their PHI and PII to be shared with unrelated third parties including Facebook/Meta, Google, Microsoft (Bing), and other marketing and social media platforms and businesses. ¶¶ 3, 18, 19. The tracking code included Meta's Pixel and Google Analytics, among others. ¶¶ 22-74. Defendant never obtained its patients' consent to share their PHI and PII with third parties for purposes unrelated to services the patients requested. ¶ 75. Defendant's conduct violates state statutory and common law, is contrary to its own Privacy Policy, is contrary to Meta's and

---

[2] Available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited March 2, 2023).

-2-

Google's policies, and is contrary to *specific guidance* provided by the Department of Health and Human Services' Office for Civil Rights. ¶¶ 101-103. While healthcare organizations regulated under the Health Insurance Portability and Accountability Act (HIPAA) may use third-party tracking tools, such as Google Analytics or Meta Pixel, in a limited way, to perform analysis on data key to operations, they are not permitted to use these tools in a way that may expose patients' PHI to these vendors. ¶ 102.

On December 30, 2022, Plaintiff filed his Complaint against Cedars-Sinai in the Superior Court of the State of California in and for the County of Los Angeles. Plaintiff's Complaint alleges the following causes of action: (1) Violation of the California Invasion of Privacy Act (Cal. Penal Code §§ 630, 631, *et seq.*); (2) Violation of the California Invasion of Privacy Act (Cal. Penal Code § 632, *et seq.*); (3) Invasion of Privacy/Intrusion upon Seclusion in Violation of California Common Law and the California Constitution, Art. 1, § 1; (4) Breach of Implied Contract; (5) Breach of Contract – Third-Party Beneficiaries; (6) Breach of Implied Covenant of Good Faith and Fair Dealing; (7) Negligence; (8) Violations of California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56, *et seq.*); and (9) Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*). ¶¶ 140-238.

Defendant removed this action to this Court on February 3, 2023, purportedly pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

**III.   ARGUMENT**

    **A.   Legal Standard**

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit." *Silver Peaks, LLC v. Caremore Health Plan*, No. 2:21-

cv-04608-FLA (PDx), 2021 U.S. Dist. LEXIS 142677, at *4, 2021 WL 3269977 (C.D. Cal. July 29, 2021) (citing 28 U.S.C. § 1441(a)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). There is a presumption that a federal court lacks jurisdiction in a particular case "'unless the contrary affirmatively appears.'" *Lake*, 14 F.4th at 1000 (citation omitted). The party seeking removal, therefore, bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). "[A]ny doubt is resolved against removability." *Lake*, 14 F.4th at 1000 (internal quotations and citation omitted).

### B. The Federal Officer Removal Statute Does Not Apply

Defendant's removal of this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), was improper because: (1) Defendant was not "acting under" a federal officer when it created its Website and placed the tracking code there; and (2) the required causal nexus between a federal officer's direction and the action challenged does not exist.

Section 1442(a)(1) permits removal of a civil action "that is against or directed to" "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). While the federal officer removal statute is to be broadly construed, the Supreme Court has "emphasized that 'broad language is not limitless.'" *Silver Peaks*, 2021 U.S. Dist. LEXIS 142677, at *8 (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). "'And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes.'" *Id.* Section 1442(a) should not be interpreted so broadly "as to 'expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.'" *Cnty. of San Mateo*, 32 F.4th at 757 (citations omitted).

-4-

In the Ninth Circuit, to avoid remand, a defendant "must establish: '(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense.'" *Cnty. of San Mateo*, 32 F.4th at 755 (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986-87 (9th Cir. 2019)).

As the Supreme Court explained:

[T]he "basic purpose" of federal officer removal is to prevent interference with the federal government's operations caused, for example, by a state's prosecution of federal officers and agents acting within the scope of their authority. It also serves to protect federal officers and agents from "local prejudice" against federal laws or officials, and to ensure "federal officials [access to] a federal forum in which to assert federal immunity defenses."

*Silver Peaks,* 2021 U.S. Dist. LEXIS 142677, at *8-9 (quoting *Watson*, 551 U.S. at 147, 152). When Congress first enacted Section 1442(a)(1) in 1815, "the phrase 'officer of the United States' was generally understood as a term of art that referred to federal officers who 'exercis[ed] significant authority.' . . . [but in] 1948, Congress amended the statute to include the language 'person[s] acting under' any officer of the United States." *Cnty. of San Mateo*, 32 F.4th at 756. "At the time, this change was understood as extending the section to apply to employees, as well as officers." *Id.* (citations omitted). Today, "'[t]he removal statute applies to private persons who lawfully assist [a] federal officer in the performance of his official duty . . . [but] only if [the private parties] were authorized to act with or for federal officers or agents in affirmatively executing duties under federal law.'" *Vaccarino v. Aetna, Inc.*, No. EDCV 18-02349 JGB (SHKx), 2018 U.S. Dist. LEXIS 202672, at *13, 2018 WL 6249707 (C.D. Cal. Nov. 29, 2018) (citation omitted).

Cedars-Sinai was not assisting a federal officer in the performance of his

official duties or authorized to act with or for federal officers or agents in affirmatively exercising duties under federal law when it disclosed Plaintiff's and the class' personal information to third parties.

### 1. Defendant Does Not Act Under a Federal Officer

In considering whether a private person is "acting under" a federal officer, for the purposes of Section 1442(a)(1), the "Supreme Court has identified a number of factors courts should consider." *Cnty. of San Mateo*, 32 F.4th at 756. These factors include, (1) "whether the person is acting on behalf of the officer in a manner akin to an agency relationship," (2) "whether the person is subject to the officer's close direction, such as acting under the subjection, guidance, or control of the officer, or in a relationship which is an unusually close one involving detailed regulation, monitoring, or supervision," (3) "whether the private person is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm," and (4) "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court." *Cnty. of San Mateo*, 32 F.4th at 756-57 (internal quotation marks and citations omitted).

Turning to the first of these factors, it is clear that Defendant Cedars-Sinai is not, with respect to the instant matter, acting on behalf of a federal officer in a manner akin to an agency relationship. "An agent is one who acts on the principal's behalf and subject to the principal's control." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1200 (N.D. Cal. 2016) (internal quotations and brackets omitted). Moreover, an agent, typically, is one who is charged with fulfilling the functions of an assignee or a proxy, in deference to and in service of a principal. Thus, merely "'performing some functions that a government agency controls is not enough to transform a private entity into a federal officer.'" *Romeo v. Canoga Healthcare, Inc.*,

No. CV 21-02918-AB (RAOx), 2021 U.S. Dist. LEXIS 147172, at *6, 2021 WL 3418730 (C.D. Cal. Aug. 5, 2021) (citing *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016)). Rather, "[r]emoval is allowed only when the acts of Federal defendants are essentially ordered or demanded by Federal authority." *Cnty. of San Mateo*, 32 F.4th at 759 (internal quotation marks and citations omitted).

Here, nothing in Defendant's Notice of Removal ("NOR") indicates Cedars-Sinai was authorized to act for or in place of the federal government or that the federal government "formally delegated its legal authority" to Cedars-Sinai "to act on its behalf." *Silver Peaks*, 2021 U.S. Dist. LEXIS 142677, at *9-10. There is also a complete dearth of proof that Cedars-Sinai was "essentially ordered or demanded by Federal authority" (*Cnty. of San Mateo*, 32 F.4th at 759) to implement the Meta Pixel. Instead, it is clear from the NOR that Cedars-Sinai engaged in such conduct entirely of its own volition.

The NOR is littered with statements that the federal government, *inter alia*, "has incentivized" (NOR ¶ 16), "modeled the behavior" (NOR ¶ 16), "established a National Health Information Technology Coordinator (ONC) . . . to spark" implementation (NOR ¶ 18), "published guidance" (NOR ¶ 20), "aims to increase" (NOR ¶ 21), and "recommends" (NOR ¶ 23) providers like Cedars-Sinai create patient portals. But, rather than demonstrating that Cedars-Sinai was acting at the direction of the federal government, these phrases mark how healthcare providers' participation in CMS's Meaningful Use program was optional—not mandated, as required "'to transform a private entity into a federal officer.'" *Romeo*, 2021 U.S. Dist. LEXIS 147172, at *6 (citation omitted). Unlike an agent whose own judgment is subordinate and subsidiary to the discretion of a principal, Defendant acted in a wholly elective manner in creating its Website and patient portal.

Furthermore, and critically, there is ***nothing*** to suggest that Cedars-Sinai was ordered by the government to implement the tracking code on its Website and patient

-7-

portal and transmit highly sensitive patient information to Facebook and other third parties without patients' knowledge or consent. Indeed, any such directive would be contrary to the position taken by the Office for Civil Rights at the U.S. Department of Health and Human Services that "[r]egulated entities . . . ***are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors***." ¶ 102 (emphasis added) (quoting HHS.gov, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022)).[3] And that is the conduct at issue in this case.

The second of the *County of San Mateo* factors, namely, whether the person is subject to the federal officer's close direction, is not met here either. Defendant's pursuit of "full Medicare reimbursement" through CMS's Meaningful Use program ("MUP") does not qualify as "as acting under the subjection, guidance, or control of the officer," nor does it place Defendant in "a relationship which 'is an unusually close one involving detailed regulation, monitoring, or supervision.'" *Cnty. of San Mateo*, 32 F.4th at 756 (citation omitted). For one, "'[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal 'official.'" *Khorsandi v. Silverado Senior Living, Inc.*, No. LA CV 21-01503 JAK (JPRx), 2021 U.S. Dist. LEXIS 174665, at *22, 2021 WL 4168192 (C.D. Cal. Sep. 14, 2021) (citations omitted); *see also Burton v. Silverado Escondido, LLC*, No.: 21-cv-1213-WQH-RBB, 2021 U.S. Dist. LEXIS 211717, at *21, 2021 WL 5087259 (S.D. Cal. Nov. 2, 2021) (largely same); *Cnty. of San Mateo*, 32 F.4th at 757 ("Nor does a person's 'compliance with the law (or acquiescence to an order)' amount to "'acting under'" a federal official who is giving an order or enforcing the law.'") (citations omitted). "This is the case 'even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.'" *Khorsandi*, 2021

---

[3]     *See supra* note 2.

-8-

U.S. Dist. LEXIS 174665, at *22 (citations omitted); *see also Lawler v. Cedar Operations, LLC*, No. EDCV 21-01017-CJC(SHKx), 2021 U.S. Dist. LEXIS 194306, at *15-16, 2021 WL 4622414 (C.D. Cal. Oct. 7, 2021) ("Mere compliance with federal regulations, 'even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored,' does not fall within the scope of the statute.") (citation omitted); *Lake*, 14 F.4th at 1004; *Burton*, 2021 U.S. Dist. LEXIS 211717, at *21; *Cortez v. Parkwest Rehab. Ctr. LLC*, No. CV 21-05172 AB (ASx), 2021 U.S. Dist. LEXIS 168019, at *7, 2021 WL 4033759 (C.D. Cal. Sep. 3, 2021) ("'[A] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'") (citation omitted). Cedars-Sinai, in creating its website, sought to secure "full Medicare reimbursement" through CMS's MUP. NOR ¶¶ 21-23. MUP is, by definition, a "rule"[4] propounded by a "federal official," and CMS is a federal agency that is a part of the Department of Health and Human Services.[5] While MUP might be "highly detailed," and even if Cedars-Sinai's activities pursuant to it were "highly supervised and monitored," Cedars-Sinai's compliance with MUP "does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Khorsandi*, 2021 U.S. Dist. LEXIS 174665, at *22.

---

[4] *See* Federal Register, *Medicare and Medicaid Programs; Electronic Health Record Incentive Program-Stage 3 and Modifications to Meaningful Use in 2015 Through 2017* (Oct. 16, 2015) https://www.federalregister.gov/documents/2015/10/16/2015-25595/medicare-and-medicaid-programs-electronic-health-record-incentive-program-stage-3-and-modifications (last visited Mar. 3, 2023).

[5] *See* Healthcare.gov, Centers for Medicare & Medicaid Services (CMS), available at https://www.healthcare.gov/glossary/centers-for-medicare-and-medicaid-services/#:~:text=The%20federal%20agency%20that%20runs (last visited Mar. 3, 2023); https://www.cms.gov/About-CMS/About-CMS ("The Centers for Medicare & Medicaid Services, CMS, is part of the Department of Health and Human Services (HHS)") (last visited Mar. 3, 2023).

This underscores how the relationship between Cedars-Sinai and CMS did not involve "subjection" or "control." *Lake*, 14 F.4th at 1004. That is, Cedar-Sinai's activities taken pursuant to CMS – namely, its creation of a Website and patient portal and implanting the tracking code – were not "highly supervised and monitored." *Khorsandi*, 2021 U.S. Dist. LEXIS 174665, at *22. Nowhere does Cedars-Sinai assert that CMS maintained direct oversight over, managed, or otherwise so much as had a hand in the process of building Defendant's Website or patient portal. Rather, as Cedars-Sinai admits, "ONC has specified how providers *can* optimize such portals" (NOR ¶ 23) and "CMS has created its own portal, *offering what is essentially a model* for private providers to follow" (NOR ¶ 24) (emphasis added). In other words, Cedars-Sinai was afforded great latitude in its "relationship" with CMS, which was altogether impersonal and noninterventionist in nature.

Third, Cedars-Sinai did not assist a "federal officer in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm." *Cnty. of San Mateo*, 32 F.4th at 756 (citation omitted). The creation of Websites and patient portals, while conducive to the mission of CMS, which is "to serve Medicare & Medicaid beneficiaries,"[6] is not indispensable therefor. What's more, increasing patients' "'meaningful use' and engagement with electronic health records through the creation of patient portals" is, as Defendant postulates, something that CMS's "Meaningful Use" program *"aims* to" achieve. NOR ¶ 21 (emphasis added). It is instructive that Defendant does not state that CMS' Meaningful Use program *compels* the creation of websites or patient portals, particularly those embedded with tracking code that transmits highly sensitive patient information to Meta and other third parties. Had Cedars-Sinai not

---

[6]  *See* CMS Mission, Vision, & Goals, available at: https://qsep.cms.gov/BHFS/M1/M1S1_180.aspx#:~:text=CMS's%20mission%20is%20to%20serve,care%20providers%20who%20serve%20them (last visited Mar. 3, 2023).

-10-

built its patient portal, the federal government would not "have had to" do so instead. "[R]eceiving incentive payments for acting in a way that promotes a broad federal interest—in an area outside the traditional responsibility of the federal government—is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto v. Regents of the Univ. of Cal.*, No. 3:22-cv-04429-JD, 2023 U.S. Dist. LEXIS 17263, at *6, 2023 WL 1448050 (N.D. Cal. Feb. 1, 2023).

Fourth, Cedars-Sinai's autonomous creation of a *private* patient health portal is not "so closely related to the government's implementation of its federal duties" that it faces "'a significant risk of state-court "prejudice,"' just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court." *Cnty. of San Mateo*, 32 F.4th at 757 (citations omitted). As mentioned in the preceding paragraph, the government here was not implementing any federal "duty." It was provisioning a monetary incentive – full Medicare reimbursement – to induce healthcare providers' furtherance of one of its policy ambitions (i.e., the creation of patient portals). Moreover, Cedars-Sinai is also not susceptible to the sort of state court prejudice that a government employee might face.

Defendant's heavy reliance on two out-of-circuit district court decisions is misplaced. *See* NOR at 9, ¶¶ 35-37 (citing *Doe v. UPMC*, No. 2:20-cv-00359, 2020 U.S. Dist. LEXIS 136077, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys.*, No. 3:20-cv-01581, 2020 U.S. Dist. LEXIS 244916, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020)). The Honorable James Donato, in a case very similar to this one, found that these same cases "entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which 'would permit removal to federal court in circumstances far beyond anything Congress intended.'" *Quinto*, 2023 U.S. Dist. LEXIS 17263, at *8-9 (*quoting Jalili-Farshchi v. Aldersly*, No. 3:21-cv-04727-JD, 2021 U.S. Dist. LEXIS 247519, 2021 WL 6133168, at *4 (Dec. 29, 2021)). Neither case adequately analyzed and applied

any of the four *County of San Mateo* factors and they therefore lack even persuasive value. Judge Donato declined to follow *UPMC* and *ProMedica Health Sys.*, stating that they "provide no basis for finding jurisdiction here," and this Court should do likewise.

In sum, Defendant has failed to prove by a preponderance of the evidence that it is "acting under" a federal officer.

**2.      There   is   No   Causal   Connection   with   Plaintiff's   Claims** Because Defendant has failed to demonstrate it is acting under a federal officer, it also cannot demonstrate that the required causal nexus exists. "[T]he 'central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—is unmet." *Lake*, 14 F.4th at 1005; *see also Westbrook v. San Pablo Healthcare & Wellness Ctr.*, No. 21-cv-06474-JD, 2022 U.S. Dist. LEXIS 103427, at *3, 2022 WL 2072933 (N.D. Cal. June 9, 2022) ("'because Glenhaven did not act under a federal officer, there is no causal nexus that allows removal under 28 U.S.C. § 1442'"). Cedars-Sinai was never directed by anyone, let alone a federal officer, to create its patient portal.

Furthermore, the "action challenged" in this case – Cedars-Sinai's imbedding of tracking code on its Website in order to transmit highly sensitive  patient  information to Facebook and other third parties in violation of California law – was certainly not "directed" by a federal officer. Cedars-Sinai offers no evidence to the contrary. Indeed, it does not claim that CMS's model patient portal used tracking code such as the Meta Pixel. NOR ¶ 24. Rather, Defendant inappositely cites to portions of Medicare.gov's Privacy Policy. *Id.* Such provisions do not, in any way, imply that Medicare.gov, like cedars-sinai.org, conspires with Meta to track and intercept individuals' internet communications. Thus, Defendant fails to meet at least one of the requirements for federal officer removal and the case must therefore be remanded.

**C.    The Court Should Award Plaintiff His Attorneys' Fees and Costs**

Upon granting a motion for remand, the District Court may order Defendant to pay Plaintiff his "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court's exercise of this discretion is reviewed only for abuse of discretion. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances," an award of attorneys' fees under 28 U.S.C. § 1447(c) is proper "where the removing party lacked an objectively reasonable basis" for removing, or by logical extension, for refusing to remand once the circumstances giving rise to the removal no longer existed and the request to remand is timely. *Id.*

The decision to award attorneys' fees lies within the trial court's discretion, and does not require a showing that removal was in bad faith. *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 446 (9th Cir. 1992). "The court's award of fees . . . is not a punitive award against defendants; it is simply reimbursement to plaintiffs of wholly unnecessary litigation costs the defendants inflicted." *Moore v. Kaiser Found. Hosp., Inc.*, 765 F. Supp. 1464, 1466 (N.D. Cal. 1991). The statutory purpose is to deter the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly. *Morris v. Bridgestone/Firestone, Inc.*, 985 F2d 238, 240 (6th Cir. 1993).

Here, Defendant's removal lacked an objectively reasonable basis and needlessly increased Plaintiff's cost of litigation. Plaintiff's counsel met and conferred with Defendant's counsel and Defendant declined to stipulate to remand. For these reasons, Plaintiff is entitled to reimbursement of his reasonable attorneys' fees incurred in bringing this motion to remand.

**IV.    CONCLUSION**

As Defendant fails to meet at least one of the requirements for federal officer removal, Plaintiff requests this Court remand this case back to Los Angeles County

Superior Court and award Plaintiff his reasonable attorneys' fees incurred in bringing this motion to remand.

DATED: March 3, 2022                    Respectfully submitted,

                                        **WOLF HALDENSTEIN ADLER**
                                         **FREEMAN & HERZ LLP**


                            By:    _/s/ Rachele R. Byrd_____
                                        RACHELE R. BYRD

                                        RACHELE R. BYRD
                                        FERDEZA ZEKIRI
                                        750 B Street, Suite 1820
                                        San Diego, CA 92101
                                        Telephone:  (619) 239-4559
                                        Facsimile:   (619) 234-4599
                                        byrd@whafh.com
                                        zekiri@whafh.com

                                        *Attorneys for Plaintiff*

-14-

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,245 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 3, 2022

                                           */s/ Rachele R. Byrd*
                                           RACHELE R. BYRD

29212v2

-15-